# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-4156

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| | * | |
| Anthony Donnelle Brown, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: June 23, 2005
Filed: September 2, 2005

_____

Before MELLOY, HEANEY, and GRUENDER, Circuit Judges.

_____

MELLOY, Circuit Judge.

Anthony Donnelle Brown was found guilty by a jury of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Brown appeals, arguing that the evidence presented at trial was insufficient to support the jury's verdict. We affirm.

I. Background

On the evening of May 23, 2004, Brown called Derria Bankhead. He told Bankhead, his ex-girlfriend, that he had just had a fight with his new girlfriend. He asked Bankhead if he could come over to her apartment to talk and have sexual relations. Bankhead told Brown that he could come over.

Shortly after the telephone conversation, in the early morning hours of May 24, 2004, Brown arrived at Bankhead's apartment. When Brown arrived, he was talking on his cellular telephone with his current girlfriend. According to Bankhead, Brown removed a handgun from his waistband and placed it on a table in front of a couch. Bankhead testified that she asked Brown why he had brought a gun to her apartment, and that he responded that he had "enemies." Bankhead told Brown that the police had previously raided her building and that investigators could search her apartment at any time. She testified that she fabricated the story in the hope it would cause Brown to leave. Brown did not leave. Rather, he sat on the couch watching television.

While Brown was watching television, Bankhead dialed 911. However, she hung up because she did not want to get Brown in trouble. The 911 operator called back and asked if there was an emergency. Bankhead told the operator that Brown was in her apartment with a gun and that she wanted him to leave. Bankhead called 911 two more times prior to the police's arrival at her apartment.

Bankhead testified that in between conversations she had with the 911 operator, Brown asked Bankhead for a sock. Bankhead testified that she got a sock from her bedroom and gave it to Brown. She stated that Brown placed the gun in the sock and rubbed the sock all over the gun. According to Bankhead, Brown then placed the gun, still inside the sock, on the living room table.

Officers from the Minneapolis Police Department arrived at the apartment while Bankhead was still on the phone with the 911 operator, approximately eight minutes after Bankhead first dialed 911 and hung up. The operator informed the police that Bankhead was moving around the apartment and that there was a man sitting on a couch in the living room with a gun in front of him. Bankhead opened the door to the apartment and allowed the officers into the apartment. When the officers entered, Bankhead left the apartment and went upstairs to wait for a police officer to come and speak to her.

Officers found Brown sitting on the couch watching television. The police ordered Brown to the ground. Officers then placed Brown under arrest and removed him from the apartment. After removing Brown from the apartment, officers found a Smith & Wesson 9 millimeter semi-automatic handgun in a sock. The gun was on the table in the living room immediately in front of where Brown had been sitting when officers entered the apartment. The gun contained a loaded magazine.

While other officers collected evidence in the apartment, Officer Crabb led Brown to his squad car. Brown escaped from Officer Crabb and a foot pursuit ensued. Officer LaNasa was in the vicinity when he learned of the chase over his radio. Officer LaNasa saw Brown, still handcuffed, run into some bushes and hide. Officer LaNasa, a canine handler with his dog in his vehicle, yelled to Brown to come out or he would send his police dog after Brown. Brown came out of the bushes and surrendered.

Brown was charged and found guilty of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). On December 8, 2004, the district court[1]

---

[1] The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

sentenced Brown to 100 months imprisonment to be followed by a two-year term of supervised release. Brown now brings this timely appeal.

II. Analysis

Brown argues on appeal that there was insufficient evidence to support the jury's verdict. We employ a "very strict standard of review on this issue." United States v. Cook, 356 F.3d 913, 917 (8th Cir. 2004). As such, we "view 'the evidence in the light most favorable to the government, resolving evidentiary conflicts in favor of the government, and accepting all reasonable inferences drawn from the evidence that support the jury's verdict.'" Id. at 917 (quoting United States v. Sanders, 341 F.3d 809, 815 (8th Cir. 2003)). We "reverse a jury's verdict only where a reasonable fact-finder must have harbored reasonable doubt relating to the government's proof on at least one of the essential elements of the offense." United States v. Jensen, 141 F.3d 830, 833 (8th Cir. 1998).

To convict Brown of being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1), the government had to prove beyond a reasonable doubt that: "(1) [Brown] had previously been convicted of a crime punishable by a term of imprisonment exceeding one year; (2) [Brown] knowingly possessed a firearm; [and] (3) the firearm had been in or had affected interstate commerce." United States v. Maxwell, 363 F.3d 815, 818 (8th Cir. 2004). Because Brown conceded that he had previously been convicted of a crime punishable by a term of imprisonment exceeding one year and that the firearm at issue had been in or affected interstate commerce, the only issue on appeal is whether Brown knowingly possessed a firearm.

"The government could prove [Brown] knowingly possessed a firearm if he had actual or constructive possession of the firearm, and possession of the firearm could have been sole or joint." United States v. Walker, 393 F.3d 842, 846-47 (8th Cir. 2005). "Constructive possession of the firearm is established if the defendant [had]

-4-

dominion over the premises where the firearm was located, or control, ownership, or dominion over the firearm itself." Maxwell, 363 F.3d at 818.

The government relied on the testimony of Bankhead, as discussed above, to prove that Brown had possession of the gun. Brown argues that the government failed to prove either constructive or actual possession. He argues that Bankhead's testimony was not credible because she harbored animosity towards him and that a reasonable jury could not believe her. Certainly, the relationship between two people is relevant in assessing the credibility of a witness. Yet, we have long held that the jury "is always the ultimate arbiter of a witness's credibility," and thus we "will not disturb the jury's findings" on appeal. United States v. Espino, 317 F.3d 788, 794 (8th Cir. 2003); United States v. Porter, 409 F.3d 910, 915 (8th Cir. 2005) ("We enjoy no greater vantage point on appeal than did the jury at trial, and we have no right to usurp the jury's role to judge the facts and make credibility findings."); United States v. Hill, 249 F.3d 707, 714 (8th Cir. 2001) ("Witness credibility is within the province of the jury, which we are not allowed to review."). Accordingly, a reasonable jury could have found, based on Bankhead's testimony, that Brown possessed the gun, and thus that Brown was guilty beyond a reasonable doubt.

III. Conclusion

For the foregoing reasons, we conclude that sufficient evidence exists to support Brown's conviction. The judgment of the district court is affirmed.

_____