# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1555

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Plaintiff - Appellee, | * |
| | * Appeal from the United States |
| v. | * District Court for the |
| | * District of Minnesota. |
| Jason Douglas Oman, | * |
| | * |
| Defendant - Appellant. | * |

_____

Submitted:  September 13, 2005
Filed:  November 2, 2005 (corrected 11/8/05)

_____

Before ARNOLD, HANSEN, and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

A jury convicted Jason Douglas Oman of two counts of bank robbery, in violation of 18 U.S.C. §§ 2 and 2113(a), and the district court[1] sentenced him to 188 months.  Oman appeals, arguing that the district court abused its discretion by admitting evidence of prior robberies and by sentencing him as a career offender.  We affirm.

_____

[1]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

A man wearing a stocking hat and a baseball cap robbed a branch of the Twin Cities Federal (TCF) Bank located inside a Cub Foods grocery store in Arden Hills, Minnesota on January 20, 2004. The robber gave the victim teller a McDonald's fast food bag and instructed her to "fill it up." She complied with the demand but also placed a dye pack in the bag along with bait money. The teller described the robber as a Caucasian male with a gray peppered beard and bright blue eyes, weighing between 170 and 180 pounds, and wearing a cap with the words "duct tape" written on it. Before the robber reached a getaway car outside, the dye pack exploded and he dropped the money bag in the parking lot.

The following day, January 21, 2004, a man robbed the TCF bank located inside a Cub Foods grocery store in Coon Rapids, Minnesota. The teller described the man as a Caucasian male approximately six feet tall. The robber placed a McDonald's bag on the counter and requested that the teller "put the money in the bag." The teller put a dye pack in the bag, and the robber took the money and ran out to the parking lot where a vehicle was waiting for him. When the dye pack exploded, he threw the money bag out of the passenger window.

Officers reviewed a parking lot surveillance videotape immediately after the second robbery and obtained both a description of the getaway vehicle and its license number. Sometime later an officer saw a car near the grocery store which matched the description of the getaway vehicle. The officer stopped it and arrested the two men inside: Oman who was driving and his passenger, Joshua Hillsheimer. They told police they had stopped at the Cub Foods store earlier in the day to buy groceries and were now on their way to the home of Hillsheimer's father.

At the preliminary detention hearing Oman claimed that he had stayed in the car while Hillsheimer went into Cub Foods to buy groceries and denied knowing anything about a bank robbery or seeing that Hillsheimer was carrying a bag when he came back to the car. An indictment was filed, charging Oman and Hillsheimer

with the Coon Rapids bank robbery in violation of 18 U.S.C. §§ 2 and 2113(a). After Hillsheimer admitted to committing both robberies, a superceding indictment was filed charging Oman with the Arden Hills Robbery as well. He proceeded to trial on both counts.

Oman had prior bank robbery convictions, and the government moved to admit evidence of them under Federal Rule of Evidence 404(b) to show modus operandi or identity, intent, knowledge, and lack of mistake. According to the government Oman admitted to committing six prior robberies of TCF banks in Cub Foods stores and had pled guilty in 1997 to two of them. The district court permitted the government to offer evidence of the two convictions, but directed it not to refer to Oman's admission that he had committed six prior robberies unless he testified; in that event the court could address any additional issues.

At trial the government presented the testimony of several witnesses. First it called a teller from the Arden Hills bank robbed on January 20, Stefanie Miller. She described the robber as being in his early thirties with a peppered beard and bright blue eyes, wearing a black cap with the words "duct tape" and a black coat. She testified that the man approached the counter with a plastic bag from either Arby's or McDonald's, set the bag on the counter, and directed her to "fill it up." She complied with the robber's request but also placed a dye pack in the bag. A teller from the Coon Rapids bank, Alisha Davidson, also testified and described the robber there as wearing a black winter cap and a red and black jacket. She testified that the robber set a McDonald's bag on the counter and directed her to "put the money in the bag." She told the jury that she filled up the bag with money from her drawer and a dye pack.

The government also called Scott Stransky who worked in loss prevention for Cub Foods. He testified to seeing a suspicious male walking through the Cub Foods store in Coon Rapids shortly after 6:00 p.m. on January 21, 2004. Suspecting that the

man was stealing DVDs, Stransky went to his office to watch him on the store surveillance cameras. He observed the man run out of the store and to a car parked in the lot. Stransky was able to use the parking lot camera to get a picture of the car as it sped out of the parking lot without its lights on. He also was able to see a small cloud of pink smoke escape from the car just before he saw the robber throw a bag out the passenger side window.

Hillsheimer admitted to the jury that he and Oman had committed the bank robberies. He explained that he needed money at the time to fix his girlfriend's car and that Oman wanted money for his apartment bills. On January 20 the two of them went to purchase clothes to wear for the robbery; they bought a hat with the words "duct tape" on it and acquired a bag from McDonald's. Oman then wore that hat and a black coat into the TCF branch in the Arden Hills Cub Foods. He told Hillsheimer when he returned to their car that he had discarded the money bag because a dye pack had exploded in it. Hillsheimer described how the two of them had driven to the home of Teresa Myers, his girlfriend, from where they had called Chrystal Carnahan and asked her to pick up Myers and go to the Cub Foods parking lot in Arden Hills to retrieve a bag of money which he said was from a bad drug deal. He also testified that Oman threw the black coat he had worn during the robbery into Myers' recycling bin.

Hillsheimer also testified about Oman's involvement in the robbery on January 21. Oman had picked him up at 1:30 in the afternoon to go find a bank to rob. After scouting different banks, they decided on the TCF Bank in Coon Rapids. Hillsheimer went inside while Oman stayed in the car. After Hillsheimer returned to the car the dye pack exploded, and he threw the money bag out the window. Oman first called Carnahan and asked her to go to Cub Foods to try to find the bag, but then the men concluded they would have to go back to the store themselves. Hillsheimer threw away the outer layer of his clothes on the way back to the grocery store where they were then apprehended.

The prosecutor called three witnesses to corroborate Hillsheimer's testimony: Myers, Carnahan, and Dewayne Esaw, a jailhouse informant. Carnahan testified that she had received a phone call from Hillsheimer on January 20, asking her to drive to Cub Foods in Arden Hills to pick up a bag of money from a drug deal gone awry, and that Oman had called her on January 21 about going to the Cub Foods in Coon Rapids to search for another bag. Myers testified that she drove with Carnahan on January 20 to look for the money bag and that Hillsheimer had asked her to dispose of clothing left in her garage. Esaw told the jury that he had met Oman in jail where Oman admitted driving the car during the Coon Rapids bank robbery and encouraging Hillsheimer to do the robbery. Carnahan and Hillsheimer both testified that Oman had talked to each of them about his prior bank robberies and how easy they were to accomplish.

The jury also received other evidence linking Oman to the robberies. This included surveillance videos and photos of both robberies and of the getaway car in the parking lot in Coon Rapids. There were letters written by Oman while he was awaiting trial which the government characterized in closing argument as attempts to bribe witnesses to support his defense. There were also cell phone records and pictures of Oman which met the teller's description of the Arden Hills robber. Finally, the government submitted a certified copy of Oman's two robbery convictions in 1997, a copy of his plea agreement and sentencing stipulations from those convictions, and a transcript of proceedings relating to the prior convictions. Pertinent portions of the documents were read to the jury, informing it that Oman had previously pled guilty to robbing two TCF banks inside Cub Foods grocery stores by handing the teller a note and bag; no weapon was displayed and no face covering or mask was worn.

Oman attempted to establish alibis for the times of the robberies. He testified that he had been working on his car on January 20 and had been with Crystal Carnahan on January 21. He also presented the testimony of two witnesses, both of

whom supported his defense that he was working on his car at the time of the Arden Hills robbery. He explained that his testimony at the preliminary detention hearing, about being with Hillsheimer at the Coon Rapids store on January 21, was mistaken because he had misunderstood the question put to him.

The jury convicted Oman of both counts. Since the district court sentenced him after the Supreme Court decided United States v. Booker, 125 S.Ct. 738 (2005), it began by calculating a guideline sentence. It set a base offense level of 20, added a two level enhancement for taking property from a financial institution and two additional levels for the second count of conviction. The court then applied an eight level enhancement for being a career offender based on Oman's two prior convictions for bank robbery and another felony conviction for aiding and abetting third degree burglary. With a total offense level of 32 and criminal history category VI, the resulting guideline range was 210 to 262 months. The court sentenced him to 188 months, a sentence lower than the advisory guideline range, because it found that Oman's career offender status overrepresented the seriousness of his criminal history.

Oman appeals his conviction and his sentence. He claims that the district court abused its discretion by admitting the Rule 404(b) evidence and that he is entitled to a new trial because of it. He also argues that the district erred by sentencing him as a career offender and that he is entitled to resentencing.

Oman argues that the district court abused its discretion by allowing the jury to hear evidence of his prior bank robbery convictions. He argues that the offenses for which he was charged in this case and those for which he had been previously convicted were not sufficiently similar and unique for a reasonable juror to find that the same person committed both sets of robberies. Oman also asserts that even if the evidence was relevant, its prejudicial impact outweighed its probative value. The government responds that the district court did not abuse its discretion in admitting evidence of the previous robberies because they occurred relatively close in time,

were similar in kind, and occurred in the same geographic area, making them admissible under Rule 404(b).

The district court has broad discretion in admitting other crimes evidence. United States v. Mays, 822 F.2d 793, 797 (8th Cir. 1987). We review its Rule 404(b) decision for abuse of discretion and "reverse only when such evidence clearly had no bearing on the case and was introduced solely to prove the defendant's propensity to commit criminal acts." United States v. Brown, 148 F.3d 1003, 1009 (8th Cir. 1998). Evidence of a prior crime, although inadmissable to show that a person acted in conformity with the prior act, may be admissible for other purposes such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). Such evidence is admissible if it is (1) relevant to a material issue; (2) similar in kind and close in time to the crime charged; (3) proven by a preponderance of the evidence; and (4) if the potential prejudice does not substantially outweigh its probative value. United States v. Thomas, 398 F.3d 1058, 1062 (8th Cir. 2005); United States v. Carroll 207 F.3d 465, 469 n. 2 (8th Cir. 2002).

Oman presented alibi defenses at trial so the main issue facing the jury was one of identity, whether or not Oman was the individual who robbed the bank on January 20 and was the driver for the January 21 robbery. The trial court's instruction indicated that it admitted the 404(b) evidence for this purpose. When the conduct involved in a prior act and in the charged offense is characterized by a unique set of "signature facts," then evidence of the prior act is admissible to show that the same person committed both crimes. Carroll, 207 F.3d at 468-69. To admit evidence on a signature facts or modus operandi theory, the trial court must make a threshold determination that a reasonable juror could find from a comparison of the facts that the same person committed both crimes. Id. In making this determination, the court should consider both the distinctiveness of the facts that make the crimes unique and the distance between the crimes in space and in time. Id.

-7-

Oman argues that the evidence admitted against him is no more unique than was the evidence improperly admitted in United States v. Carroll, 207 F.3d 465 (8th Cir. 2000). In Carroll, we found that evidence should not have been admitted to show the identity of a bank robber when the previous crime and the charged offense were ten years apart, involved different kinds of financial institutions, and were only similar in that they were both committed by a perpetrator wearing a nylon stocking mask who vaulted over the counter to put money in his bag. He also points to other cases involving robberies of grocery store banks to show that the 1997 and 2004 robberies do not share a unique trait.

The circumstances in Oman's earlier robberies and those here are more similar than those compared in Carroll. This indictment charged robberies of TCF banks in suburban Cub Food stores, and Oman was previously convicted of robbing two TCF banks inside Cub Foods grocery stores in Twin Cities suburbs. In none of these robberies was a weapon used or a teller threatened, and each time a bag was presented to the teller for money to be placed inside of it. In all four instances the robber wore nothing over his face. The crimes charged here and the prior convictions were separated by only seven years, and we have previously approved the admission of other convictions for acts committed up to thirteen years before the crime charged. United States v. Rush, 240 F.3d 729, 731 (8th Cir. 2001).

Oman also argues that the district court abused its discretion by permitting the jury to hear evidence of his prior convictions because the unfair prejudice of admitting the evidence substantially outweighed its probative value. It is for the district court to "balance the probative value of the prior acts evidence against its prejudicial effect, and its decision in this case is entitled to deference." Thomas, 398 F.3d at 1063. The government had the burden of proving its case beyond a reasonable doubt and Oman's presence at the robberies was the central issue because of his alibi defenses. The judge also gave the jury a limiting instruction on how the evidence could be used, thereby decreasing the possibility that unfair prejudice would

result from its admission. Id.  We conclude that the district court did not abuse its discretion by admitting evidence of his prior offenses.

Even if the district court had erroneously admitted this evidence, Oman would not be entitled to a new trial if the evidence was harmless. Carroll, 207 F.3d at 470. An error is harmless if it "does not affect substantial rights" of the defendant, Fed R. Crim. P. 52(a), and "did not influence or had only a slight influence on the verdict." Carroll, 207 F.3d at 470.  Here, the government presented overwhelming evidence of Oman's guilt. United States v. Smithy, 410 F.3d 426, 429 (8th Cir. 2005). Hillsheimer testified that Oman committed the first robbery and knowingly drove the getaway vehicle for the second robbery.  This testimony was corroborated by independent evidence, including photographs of the robbers and the consistent accounts of Carnahan and Myers.  The jury saw cell phone records supporting Hillsheimer and heard Esaw's testimony that Oman admitted to driving the vehicle in the second robbery.  Since the court instructed the jury that any evidence of past crimes could not be used to show Oman was more likely to commit the current robberies, any possibility of unfair prejudice or harmful impact on the defendant's substantial rights was lessened. Redding v. United States, 105 F.3d 1254, 1255 (8th Cir. 1997).

Oman also contends that he is entitled to resentencing because the district court treated him as a career offender under U.S.S.G. § 4B1.1.[2]  The district court imposed a lower sentence than that recommended by the guidelines for a career offender, but Oman argues that his prior conviction for burglary of an unoccupied nonresidential building should not have been considered a violent crime.  His suggested guideline

---

[2] Oman's brief mistakenly states that the district court sentenced him under the Armed Career Criminal Act, 18 U.S.C. § 924(e), and he has filed a pro se motion requesting new counsel and other relief.  That motion is denied, but Oman is advised that claims for ineffective assistance of counsel should ordinarily be brought by motion under 28 U.S.C. § 2255 rather than on direct appeal.

range would have been lower without the career offender enhancement, and he contends the sentence imposed would also have been less.

A defendant is a career offender under the guidelines if he has two prior convictions for crimes of violence or controlled substance abuse offenses. USSG § 4B1.1. The district court sentenced Oman as a career offender based on his prior bank robbery convictions and his 2001 conviction for aiding and abetting third degree burglary-felony for attempting to steal computer equipment from an elementary school.[3] We review de novo the district court's conclusion that burglary of a nonresidential building is a crime of violence for purposes of the career offender provision. United States v. Mohr, 407 F.3d 898, 901 (8th Cir. 2005), petition for cert. filed, (Oct. 11, 2005) (No. 05-7020).

Oman argues that the district court should have analyzed the facts of his burglary conviction to determine if it constituted a crime of violence under the career offender definition in USSG § 4B1.2(a). This court has previously rejected such an argument, see, e.g., id.; United States v. Peltier, 276 F.3d 1003 (8th Cir. 2002), and we are bound by our prior precedent. United States v. Caldwell, 339 F.3d 680, 681 (8th Cir. 2003). The district court did not err in concluding that Oman's previous conviction for aiding and abetting the burglary of an elementary school was a crime of violence and that Oman was therefore a career offender.

In sum, the district court did not abuse its discretion by permitting the government to introduce evidence of Oman's prior convictions, there was other overwhelming evidence of his guilt, and the court did not err by treating his prior

---

[3]It appears from the record that Oman's two prior bank robbery convictions were treated as one for purposes of the career offender guideline. Under USSG § 4A1.2(a)(2) "prior sentences imposed in related cases are to be treated as one sentence." Oman pled guilty to both robberies on August 19, 1997 and was sentenced to 48 months for both offenses on January 16, 1998. See id.

burglary conviction as a crime of violence for sentencing purposes. Accordingly, the judgment of the district court is affirmed.

_____