# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3809

_____

United States of America,                    *
                                             *
          Plaintiff - Appellee,              *
                                             *   Appeal from the United States
               v.                            *   District Court for the
                                             *   District of Nebraska.
Ricky Davis,                                 *
                                             *
          Defendant - Appellant.             *

_____

Submitted: April 17, 2006
    Filed: June 7, 2006

_____

Before MURPHY, MELLOY, and GRUENDER, Circuit Judges.

_____

MURPHY, Circuit Judge.

       A jury convicted Ricky Davis of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and he was sentenced to 63 months. Davis appeals, arguing that there was insufficient evidence to sustain his conviction and objecting to the admission of evidence related to a traffic stop and a search warrant. We affirm.

       Officers of the Omaha Police Department learned from a confidential informant that Ricky Davis was selling marijuana at a residence located at 3921 North 45th Street. They applied for a search warrant, and while it was being processed they set up surveillance to monitor traffic to and from the residence. Surveillance officers saw

a car stop at the house and watched a man get out and go up to the front door and return to the vehicle approximately ten minutes later. After he drove off, officers stopped the car and identified the man they had seen go up to the house as Burnell McCowin. They found a bag of marijuana in his jacket pocket.

Approximately forty five minutes after police stopped McCowin, officers executed the search warrant at the residence and found Davis in his underwear in the living room with his girlfriend. After securing the premises, officers searched the first floor and found a small amount of marijuana, a digital scale, a partially smoked blunt, and baggies. In the main floor bedroom they found a handgun hidden between the mattress and box spring of the bed, $2100 in Davis' jeans which were lying on top of the dresser, a pile of men's clothes, several pairs of men's shoes, and a receipt from the county health department with Davis' name on it. They also recovered photographs displayed and stored in the home which pictured Davis with his friends.

Prior to trial Davis raised several evidentiary objections. He argued that any hearsay regarding his alleged marijuana sales should be excluded and offered to admit that the officers had a valid search warrant. The district court declined to rule on the objection at that time. Davis also filed a motion in limine to exclude evidence of McCowin's traffic stop under Federal Rule of Evidence 403 because any probative value of the evidence would be substantially outweighed by the danger of unfair prejudice and confusion of the issues. The court prohibited the government from mentioning the traffic stop during its opening statement but left open the question of whether it could be offered during its case in chief.

During the direct examination of Officer Joseph Baudler at trial, Davis raised hearsay and relevancy objections to questions about the basis for the search. The court sustained the objections raised by Davis but permitted the prosecutor to introduce the first page of the warrant. The face sheet stated that based upon the affidavit of officers John Waller and Edith Andersen there was probable cause that

Ricky Davis "resides or is in control" of the residence at 3921 North 45th Street, Omaha, Nebraska, and that marijuana and weapons would be found there. The court instructed the jury that the exhibit was received "for the limited purpose of demonstrating the reason and lawfulness of the search in question and for no other reason". The court also permitted testimony describing the traffic stop of McCowin and the bag of marijuana found on him, overruling objections made by Davis.

Other officers testified about what was found during the search. Sergeant David Bianchi testified that Davis had admitted that he owned the men's shoes found in the residence, that Davis told officers he wanted to wear a specific pair of shoes when they took him in, and that he rejected the first three pairs taken to him as the wrong ones. Other witnesses testified that the bag containing marijuana found on McCowin was similar to the baggies found in the residence and that the pictures displayed and stored in the residence were of Davis and his friends.

Davis called his own witnesses. His sister Tommie testified that she was renting the residence and that she had taken the gun from her nephew and hid it under the mattress until she could dispose of it. She also said that she had given Davis a key that evening so that he could entertain his guest at her residence and that the men's clothes and shoes in the bedroom were hers because she wore them for comfort around the house. Davis' sister Sharon indicated that Ricky would visit the house to feed the three pit bull dogs he kept there. McCowin testified that the reason he stopped his car at the house was so that his passenger could obtain a car from Davis and that it was the passenger who had gone up to the door. McCowin admitted that he occasionally used marijuana with Davis but denied getting marijuana from him that evening. Davis also testified and admitted that he used marijuana and that all of the drugs in the residence belonged to him. He testified that he used his sister's house to entertain his girlfriend but that he did not have his own key and that he never slept in the bedroom. He denied any knowledge of the firearm and testified that he had rejected the shoes selected by Officer Bianchi because they did not belong to him.

-3-

Davis also presented evidence that only Tommie's name was on the lease and that the bag found on McCowin was not any different from bags commonly used in kitchens.

Davis moved for a judgment of acquittal at the end of the government's case in chief and at the conclusion of the evidence. The district court denied the motions, and the jury returned a guilty verdict. The court sentenced him to 63 months imprisonment, and Davis appeals. He argues that the evidence was insufficient to sustain his conviction, that introduction of the first page of the search warrant was improper, and that the court abused its discretion by permitting evidence of the traffic stop. The government counters that there was more than sufficient evidence to uphold Davis' conviction, that the court did not abuse its discretion by permitting evidence of the stop because the presence of drugs on McCowin just after his visit to Davis made it more likely that Davis dealt drugs and possessed a firearm, and that evidence of the warrant was necessary to provide jurors "context" for the search. It also maintains that any error in the district court's evidentiary rulings would be harmless given the overwhelming evidence of Davis' guilt.

Davis argues that his conviction should be reversed because there was insufficient evidence for the jury to conclude that he possessed the firearm. In reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the jury verdict and will only reverse if no reasonable jury could have found the defendant guilty. United States v. Ramirez, 350 F.3d 780, 783 (8th Cir. 2003). The verdict will be upheld so long as the government produced sufficient evidence for a reasonable jury to find the elements of the offense beyond a reasonable doubt. United States v. Ruiz, 412 F.2d 871, 883 (2005).

To obtain a conviction under 18 U.S.C. § 922(g)(1) the government must "prove beyond a reasonable doubt that (1) the defendant has previously been convicted of a crime that was punishable by a term of imprisonment exceeding one year, (2) the defendant knowingly possessed a firearm, and (3) the firearm has been

in or has affected interstate commerce." United States v. Urick, 431 F.3d 300, 303 (8th Cir. 2005). Since Davis stipulated to the first and third elements, the only issue is whether there was sufficient evidence upon which the jury could have found that he knowingly possessed the firearm.

The government can prove constructive possession by showing that the defendant had "dominion over the premises where the firearm [was] located, or control, ownership, or dominion over the firearm itself." United States v. Claybourne, 415 F.3d 790, 795-96 (8th Cir. 2005). Although evidence of mere proximity is an insufficient ground to uphold a conviction, Urick, 431 F.3d at 303, "constructive possession can be established by a showing that the firearm was seized at the defendant's residence." United States v. Boyd, 180 F.3d 967, 978-79 (8th Cir. 1999).

The jury heard credible testimony allowing it to find that Davis resided at the residence and exercised constructive possession of the firearm. Along with testimony that pictures of Davis and his friends were found throughout the house, officers testified that men's clothes and multiple pairs of men's shoes were found in the bedroom where the gun was located. Moreover, Davis kept his three pit bulls in the back yard of the home and officers found a receipt from the county health department with Davis' name on it on the dresser next to the bed. Although the jury heard conflicting testimony, conflicts in the evidence are for the jury to resolve and we will not disturb its factual findings on appeal. United States v. Brown, 422 F.3d 689, 692 (8th Cir. 2005). The jury could reasonably infer from the circumstances that Davis had exercised constructive possession of the firearm.

Davis also asserts that the district court abused its discretion by permitting the jury to hear evidence of the traffic stop of Burnell McCowin. Although he concedes that we have recognized a "correlation between drug dealing and weapons", United States v. White, 356 F.3d 865, 870 (8th Cir. 2004), he argues that evidence of the marijuana found on McCowin shortly after stopping by Davis' place should have been

excluded because he was stopped several blocks away from where the gun was found. Evidence is "not unfairly prejudicial merely because it hurts a party's case", United States v. Emeron Taken Alive, 262 F.3d 711, 714 (8th Cir. 2001), and there was testimony that McCowin had gone up to the residence, stayed for less than ten minutes, and was then found with marijuana packaged in bags similar to those found in the residence. The district court did not abuse its discretion by concluding that the evidence was relevant to the jury issue of whether Davis knowingly possessed the firearm. See United States v. Claxton, 276 F.3d 420, 423 (8th Cir. 2002).

Finally, Davis argues that the district court erred in permitting the government to introduce the first page of the warrant because it contains hearsay, it violated his right to confrontation under the Sixth Amendment, and its probative value was substantially outweighed by its prejudicial impact. The government counters that the warrant was not hearsay because it was introduced for the limited purpose of establishing why the police officers were present at the residence. We generally review a trial court's admission of evidence for an abuse of discretion, United States v. King, 36 F.3d 728, 732 (8th Cir. 1994), but confrontation clause objections are reviewed de novo. United States v. Lee, 374 F.3d 637, 643 (8th Cir. 2004). If evidence were admitted in violation of Davis' confrontation rights, the question would then be whether the error was harmless beyond a reasonable doubt. Id. at 644.

Hearsay is a statement "other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted," Rule 801(c), but a statement is not hearsay "if it is offered for the limited purpose of explaining why a police investigation was undertaken". United States v. Watson, 952 F.2d 982, 987 (8th Cir. 1991) (internal citation omitted). The district court admitted the face sheet for such a purpose and also instructed the jury that the warrant was received "for the limited purpose of demonstrating the reason and lawfulness of the search in question and for no other reason". Given this record we conclude that the district court did not abuse its discretion by overruling Davis' hearsay objection or err

by overruling his confrontation clause objection. Moreover, the warrant was issued on the basis of the affidavit testimony of Officers Waller and Andersen who both testified at trial and were available for cross examination. See Bear Stops v. United States, 339 F.3d 777, 781 (8th Cir. 2003).

Davis also argues that the first page of the warrant should have been excluded under Rule 403. Application of that rule requires "not only a comparison of the probative value and prejudicial effect of the disputed evidence, but of the relative probative value and prejudicial effect of any evidentiary alternatives." United States v. Becht, 267 F.3d 767, 773 (8th Cir. 2001). The first page of the warrant indicated that on the basis of the testimony of Officers Waller and Andersen a state judge had concluded there was probable cause that Davis lived at the residence and that drugs and firearms would be found there. Since a key issue in the case was whether the house was Davis' residence, there was a danger that the face sheet could unduly influence the jury in its factfinding. This danger was underscored by the prosecutor's closing argument which referred to the face page of the warrant as "one of the first pieces of evidence that came in" and told the jury that the "information that led to [the officers] wanting to do a search" was important and that the jurors should take some time to "look [the warrant] over."[1] Given the danger that the jury could be confused and that the prejudicial effect of the exhibit could outweigh its probative value, we conclude that it was an abuse of discretion to admit the face sheet of the warrant, particularly when Davis was willing to admit that the officers had a legal basis to search.

Davis is not entitled to any relief if admission of the warrant was harmless error. United States v. Oman, 427 F.3d 1070, 1076 (8th Cir. 2005). An error is

---

[1] Davis did not object to the prosecutor's closing argument at trial. He does not argue that he is entitled to a new trial because of it, and he has not shown that the prosecutor's comments had an effect on the outcome given the overwhelming evidence of guilt. See United States v. Johnson, 408 F.3d 535, 539 (8th Cir. 2005).

harmless if it "does not affect substantial rights" of the defendant, Fed. R. Crim. P. 52(a), and "did not influence or had only a slight influence on the verdict." United States v. Carroll, 207 F.3d 465, 470 (8th Cir. 2000). The government presented overwhelming evidence of Davis' guilt. United States v. Smith, 410 F.3d 426, 429 (8th Cir. 2005). The jury heard evidence that Davis was wearing only underwear when officers executed the warrant at the residence, that men's clothes and shoes were found in the bedroom where the gun was hidden, and that his receipt from the county health department was on the dresser. Davis kept three pit bulls at the residence, and officers found pictures of him with his friends throughout the house, along with marijuana, a digital scale, and a partially smoked blunt. See White, 356 F.3d at 870. Moreover, the district court's instruction limited the jury's use of the evidence to a proper purpose. United States v. Thomas, 398 F.3d 1058, 1063 (8th Cir. 2005). We therefore conclude that the error in admitting the warrant was harmless.

Accordingly, we affirm the judgment of the district court.

GRUENDER, CIRCUIT JUDGE, concurring.

I concur in full in the judgment and in the Court's opinion except as to the finding of error in the admission into evidence of the face sheet of the search warrant under Federal Rule of Evidence 403. I would find that the district court did not err in admitting the face sheet of the search warrant.

I believe that, as a general proposition, admitting into evidence the search warrant face sheet can be proper to show the context for law enforcement presence and the lawfulness of the subsequent search. *Cf. United States v. Wilson*, 922 F.2d 1336, 1339 (7th Cir. 1991) (holding that, without evidence of a warrant to explain the officers' presence, the jury "would have been left scratching its collective head about what the police were doing at [the defendant's girlfriend's] apartment in the first place"). Ordinarily, the face sheet of a search warrant would provide solely that there

is probable cause to believe that certain evidence or contraband may be found at a specific location.

The face sheet of the search warrant in the instant case makes the unusual additional finding of probable cause to believe that Davis resided at the premises to be searched. While such an additional finding could be problematic in some cases, I am not convinced that the inclusion of this finding results in the probative value of the warrant face sheet being substantially outweighed by the danger of unfair prejudice or confusion, as required under Fed. R. Evid. 403 to establish inadmissibility. It certainly is true, as the Court notes, that Davis's residency in or control over the house was a key issue at trial. However, the district court immediately gave the limiting instruction that the face sheet was to be "received for the limited purposes of demonstrating the reason and lawfulness of the search in question and for no other reason than that." Because the district court gave an appropriate limiting instruction, I believe that the additional probable cause finding set forth in the face sheet of the search warrant should not have a significant effect on the Rule 403 balancing test. *See United States v. Karam*, 37 F.3d 1280, 1286 (8th Cir. 1994) (holding that this Court is required to assume that the jury followed the limiting instructions given by the district court).

The Court notes that in applying the Rule 403 balancing test, we should consider the "relative probative value and prejudicial effect of any evidentiary alternatives," *ante* at 7 (quoting *Becht*, 267 F.3d at 773), and cites Davis's willingness "to admit that the officers had a legal basis to search" as an evidentiary alternative weighing against admissibility of the search warrant face sheet. I agree that a stipulation that law enforcement was present pursuant to a search warrant duly authorized by a judge would lessen the probative value of admitting the search warrant itself and, perhaps, tip the balance of the Rule 403 analysis in favor of inadmissibility. However, I am not convinced that Davis expressed a willingness to stipulate in this case. When the Government at trial offered the warrant face sheet for admission into

evidence, Davis did not point to any previous purported offer to stipulate nor did he offer to stipulate at that time in support of his objection. Prior to opening statements, Davis's counsel merely stated that "[t]he search warrant we are going to admit to," in the context of arguing against the admission of evidence related to uncharged marijuana dealing. However, this pretrial remark, even in context, is ambiguous at best, and nothing in the record suggests that Davis meant for it to be construed so broadly as to be a stipulation that the police were present pursuant to a search warrant duly authorized by a judge.

The Court also relies on the fact that the Government referred to the face sheet of the search warrant during closing argument. While I share the Court's concern regarding how the Government referred to the search warrant face sheet during its closing argument, especially in light of the limiting instruction, it seems to me that these remarks might have been the basis for an objection based on improper argument. However, I do not find the Government's unchallenged statements in its closing argument particularly relevant to a Rule 403 admissibility decision made during the Government's case-in-chief.

————————————————————