# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2036

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| Steven William Wells, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: October 17, 2006
Filed: December 4, 2006

_____

Before WOLLMAN, RILEY and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

A jury found Steven William Wells guilty of being a felon in possession of firearms in violation of 18 U.S.C. §§ 922(g)(1), 924(a). The district court[1] sentenced Wells to 120 months' imprisonment. Wells appeals his conviction and sentence. We affirm.

_____

[1]The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa.

## I.    BACKGROUND

On November 20, 2004, officers from the Iowa Department of Natural Resources set up a decoy deer less than a mile from the Iowa-Missouri border during the Missouri deer rifle season to catch people illegally shooting deer in Iowa. Wells spotted the decoy, drove to his house and asked Shelly Elsen, his fiancé, to bring his grandfather's gun, an eight-millimeter Mauser rifle ("Mauser"), out from the house. Elsen brought the Mauser to Wells's truck, and Wells drove back to the decoy deer with his friend, Jason Reents, in the passenger seat. When they reached the decoy, Reents shot the decoy. Supervisory Officer Mark Sedlmayr of the Iowa Department of Natural Resources, the officer conducting surveillance of the decoy, heard the gun shots and saw the truck leave the area. Officer Sedlmayr stopped the truck, found the Mauser and arrested Wells and Reents for violating Iowa hunting laws. Wells told Officer Sedlmayr that he was prohibited from possessing firearms and that the Mauser belonged to Reents. Wells later told Officer Sedlmayr that the firearm belonged to his father.

On June 1, 2005, Special Agent Darren Hampton of the Bureau of Alcohol, Tobacco, Firearms and Explosives went to Wells's house to question Wells further about the decoy deer incident. Wells cooperated with Special Agent Hampton's questioning and told Elsen to give Special Agent Hampton a .22-caliber Marlin rifle ("Marlin") that was in the house. On June 22, 2005, Wells was indicted for being a felon in possession of the Mauser and Marlin in violation of 18 U.S.C. §§ 922(g)(1), 924(a).

At trial, Wells testified that the house where he and Elsen lived was his father's house. Elsen, though, testified that Wells was in charge of the house when his father was away. Wells also testified that his father owned the firearms and was moving them out of the house because he was getting ready to move. Wells testified that he did not know if his father had removed all of the firearms and that he did not have any control over the firearms. Elsen testified that the Marlin she gave Special Agent

Hampton was the only firearm in the house on June 1, 2005, because she removed the rest of the firearms from the house while Wells was in jail following his arrest for the decoy deer incident. She also testified that she retrieved the Marlin because Wells requested her to bring it to him. Wells claimed that he only knew about that last firearm because Elsen informed him a few days earlier that she had removed all of the firearms except the Marlin.

Wells moved for a judgment of acquittal at the close of the Government's case-in-chief and at the close of the evidence. The district court denied these motions, and the jury found Wells guilty of being a felon in possession of firearms. At sentencing, the district court determined that Wells's two prior felony convictions for operating a motor vehicle while under the influence of alcohol in violation of Iowa Code § 321J.2 were crimes of violence and that his prior felony conviction for gathering where drugs would be distributed, used or possessed in violation of Iowa Code § 124.407 was a controlled substance offense. Accordingly, the district court set Wells's base offense level at 24 pursuant to U.S.S.G. § 2K2.1(a)(2). The district court also determined that at least three firearms were involved in the offense and increased Wells's offense level by two levels pursuant to U.S.S.G. § 2K2.1(b)(1)(A). The district court then imposed a two-level increase for Wells's obstruction of justice pursuant to U.S.S.G. § 3C1.1. Based on Wells's total offense level of 28 and his criminal history category of VI, the court determined an advisory guidelines range of 140 to 175 months and then sentenced Wells to 120 months' imprisonment, the statutory maximum.

## II. DISCUSSION

Wells argues that there was insufficient evidence to support the jury's verdict that he possessed the firearms. "We view the evidence and all reasonable inferences therefrom in the light most favorable to the verdict, and we will reverse only if no

reasonable jury could have found [Wells] guilty." *United States v. Tindall*, 455 F.3d 885, 887 (8th Cir. 2006).

"To obtain a conviction under 18 U.S.C. § 922(g)(1) the government must prove beyond a reasonable doubt that (1) the defendant has previously been convicted of a crime that was punishable by a term of imprisonment exceeding one year, (2) the defendant knowingly possessed a firearm, and (3) the firearm has been in or has affected interstate commerce." *United States v. Davis*, 449 F.3d 842, 846 (8th Cir. 2006) (internal quotation omitted). Wells does not challenge the first or third element. Wells challenges only the sufficiency of the evidence that he knowingly possessed the firearms.

A defendant knowingly possesses a firearm if he has actual or constructive possession of it, and the possession can be sole or joint. *United States v. Walker*, 393 F.3d 842, 846-47 (8th Cir. 2005), *cert. denied*, --- U.S. ---, 126 S. Ct. 463 (2005). "Constructive possession of the firearm is established if the person has dominion over the premises where the firearm is located, or control, ownership, or dominion over the firearm itself." *United States v. Maxwell*, 363 F.3d 815, 818 (8th Cir. 2004), *cert. denied*, 543 U.S. 1154 (2005). Wells contends that the evidence does not show that he actually or constructively possessed the Mauser or the Marlin.

With respect to the Mauser, Wells argues that his father owned the house and Wells was not aware of any firearms in the house on the day of the decoy deer incident. He also never touched the Mauser that Elsen brought from the house because she placed it in the truck and Reents shot the firearm at the decoy. However, a reasonable jury could find that Wells had dominion and control over the house because Elsen testified that Wells was in charge of it when his father was away. *See United States v. Urick*, 431 F.3d 300, 303 (8th Cir. 2005) (holding that a defendant had constructive possession over firearms located in a residence where he lived and

-4-

kept his personal effects). Wells also testified that the firearm Elsen brought to the truck would not have left the house if he had not asked for it. The fact that Wells could control the delivery of the Mauser to him is sufficient evidence that he had dominion and control over that firearm. Finally, Officer Sedlmayr found the Mauser in the truck that Wells was driving, and Wells knew that the Mauser was in the truck. This evidence also would allow a reasonable jury to find that Wells had constructive possession of the Mauser. *See United States v. Maloney*, 466 F.3d 663, 667 (8th Cir. 2006) (holding that a defendant exercised control over a firearm that was found in a vehicle he was driving). Because a reasonable jury could find beyond a reasonable doubt that Wells knowingly possessed the Mauser, the evidence was sufficient to convict Wells of being a felon in possession of the Mauser.

Sufficient evidence also established that Wells had constructive possession of the Marlin when Special Agent Hampton interviewed him. Wells argues that he merely knew there was one firearm in the house but did not know where the firearm was located. On that day, though, Wells offered to get the firearm for Special Agent Hampton. Only after Special Agent Hampton requested that someone else get the firearm did Wells ask Elsen to bring the Marlin to Special Agent Hampton. Elsen retrieved the firearm because Wells requested it. Wells's willingness to retrieve the Marlin himself, as well as his instruction to Elsen, is sufficient to demonstrate that he had control over both the house and the Marlin itself. Therefore, a reasonable jury could find that Wells also knowingly possessed the Marlin.

Wells next argues that the district court improperly calculated his advisory sentencing guidelines range. We review a district court's factual findings for clear error and its interpretation and application of the sentencing guidelines de novo. *United States v. Huber*, 462 F.3d 945, 949 (8th Cir. 2006). Wells contends that the district court erred in its determination that he had felony convictions for two prior crimes of violence and one prior controlled substance offense. A defendant's base

offense level is "24, if the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 2K2.1(a)(2). The district court determined that Wells had two previous felony convictions of crimes of violence and one previous felony conviction of a controlled substance offense. Therefore, the district court set Wells's base offense level at 24.

At sentencing, Wells did not object to the factual statements in the presentence investigation report that he had two prior felony convictions for operating a motor vehicle while under the influence of alcohol and that he was driving the vehicle during each incident. We have held that a felony conviction for driving while intoxicated qualifies as a violent felony where the proper record establishes that the defendant was actually driving the vehicle while intoxicated. *United States v. McCall*, 439 F.3d 967, 972 (8th Cir. 2006) (en banc); *United States v. Webster*, 442 F.3d 1065, 1067-68 (8th Cir. 2006), *cert. denied*, --- U.S. ---, 127 S. Ct. 200 (2006) (applying *McCall*'s holding to the Iowa felony offense of operating while intoxicated). Our holding in *McCall* applied to the definition of "crime of violence" under 18 U.S.C. § 924(e), but this holding also applies to the definition of "crime of violence" under U.S.S.G. § 2K2.1(a)(2) because the definitions under these statutes are "nearly identical." *United States v. Spudich*, 443 F.3d 986, 987 (8th Cir. 2006) (per curiam). While Wells argues that the felony offense of operating while intoxicated does not constitute a violent felony, our holding in *McCall* clearly establishes that it qualifies as a violent felony where the defendant is proven to have been driving the vehicle. Since Wells concedes that he was driving in both incidents, the district court did not err in finding that Wells's convictions were crimes of violence and that his base offense level was 24. We need not determine whether the district court correctly found that Wells's Iowa conviction of gathering where drugs would be distributed, used or possessed was a conviction of a controlled substance offense because Wells's two felony convictions for operating while intoxicated satisfy the requirement of U.S.S.G. § 2K2.1(a)(2).

Wells also argues that the district court clearly erred in determining that there were three to seven firearms involved in his offense for sentencing purposes. The district court is required to impose a two-level increase to the base offense level if three to seven firearms were involved in the offense. U.S.S.G. § 2K2.1(b)(1)(A). These firearms must be "unlawfully sought to be obtained, unlawfully possessed, or unlawfully distributed." U.S.S.G. § 2K2.1, cmt. n.5. The district court can make such a finding of fact at sentencing when it presided over the trial and the finding of fact is based on the trial record. *United States v. Goolsby*, 209 F.3d 1079, 1081 (8th Cir. 2000) (per curiam).

Wells argues that the evidence only established that two firearms were involved: the Mauser used on the decoy deer and the Marlin that Elsen gave to Special Agent Hampton. However, trial testimony established that at least one additional firearm was in the house during this time period and that Wells constructively possessed it. Elsen testified that she removed other firearms from the house after Wells was arrested. While the district court noted that there was some inconsistency in Elsen's testimony, it found that her testimony clearly supported the finding that at least one additional firearm was in the house. Additionally, Wells testified that he knew there were other guns in the house when he stated Elsen could "move them guns around wherever she wanted to. She did the other ones." He also specified to Elsen which of several firearms he wanted on November 20, 2004. With this evidence of Wells's knowledge of and control over additional firearms in the house, the district court did not clearly err in finding that Wells had constructive possession of at least one additional firearm. *See United States v. Lewis*, 236 F.3d 948, 950 (8th Cir. 2001) (holding that the district court correctly increased a defendant's offense level under U.S.S.G. § 2K2.1(b)(1)(B) because the firearms found at his residence were under his control)

.

## III. CONCLUSION

Accordingly, we affirm Wells's conviction and sentence.

_____