# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 06-4161

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Gregory John Smith, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: September 25, 2007
Filed: November 20, 2007

_____

Before COLLOTON, BEAM, and GRUENDER, Circuit Judges.

_____

BEAM, Circuit Judge.

Gregory John Smith was convicted by a jury of illegal possession of a machine gun, in violation of 18 U.S.C. §§ 922(o) and 924(a)(2), and illegal possession of an unregistered firearm (also the machine gun), in violation of 26 U.S.C. §§ 5841, 5861(d) and 5871. The district court[1] sentenced Smith to eighteen months in prison

_____

[1]The Honorable David S. Doty, District Judge, United States District Court for the District of Minnesota.

on each count, followed by two years of supervised release on each count, to run concurrently. Smith appeals his convictions. We affirm the district court.

## I.     BACKGROUND

On September 28, 2005, Conservation Officer Neil Freborg was patrolling some fields near Farden Township, Minnesota. The fields contained a large number of deer, and Officer Freborg was watching for hunters who might attempt to shoot deer out of season. As Officer Freborg watched, a car approached and stopped about a quarter of a mile away from his location. Officer Freborg heard three or four gunshots, which he believed were from a small-caliber weapon, come from the direction of the car. When the car approached him, Officer Freborg turned on his lights and stopped the car for a suspected poaching violation.

There were three individuals inside the car, all brothers. The driver was Thomas Goodman. Gregory Smith, the appellant, was in the front passenger seat and Timothy Goodman was in the back seat, behind Smith. Officer Freborg asked the men what they had been shooting at, and Smith told Officer Freborg he had fired several shots from a .22 caliber semi-automatic rifle at a deer standing in the field. Officer Freborg then removed a .22 caliber Ruger 1022 rifle from the front passenger seat and returned to his patrol car, where he radioed for backup.

While he waited for backup, Officer Freborg informed the brothers he was going to search the rest of the car for weapons. All three men indicated there were no other weapons in the car. The search revealed a Sten 9-millimeter sub-machine gun on the backseat floorboard, behind the driver's seat, concealed beneath a pile of clothes. A loaded magazine for the machine gun lay beside it, also beneath the clothes. There was no indication the machine gun had been recently fired.

Deputy Gregory Swanstrom, a deputy sheriff with the Hubbard County Sheriff's Office, responded to Officer Freborg's call for backup. Once he arrived, the officers conducted a more complete search of the vehicle. They removed each occupant in turn and searched his person and the area where he had been sitting. Each man was then placed back in the car and the officers moved on to the next man.

The officers first removed Timothy Goodman. The officers then removed Smith from the front passenger seat. Nothing was found on Smith's person. When, however, the officers searched the area where Smith had been sitting, Deputy Swanstrom observed a box of .22 shells on the front seat, an empty .22 casing on the floor and an empty 9-millimeter casing on the floor. Additionally, while Smith was out of the car, the officers found live 9-millimeter ammunition in an armrest.

Smith was subsequently indicted for unlawful possession of a machine gun and unlawful possession of an unregistered firearm, and a jury convicted him on both counts. On appeal, Smith argues he was denied a fair trial because the prosecutor made improper and prejudicial closing remarks. He also challenges the evidence as insufficient to support either conviction, arguing that no reasonable juror could have found he knowingly possessed the machine gun on September 28, 2005.

## II.    DISCUSSION

### A.    Prosecutor's Closing Arguments

Smith first contends that he was denied a fair trial because the prosecutor made improper closing remarks that relied on evidence not in the record and invited the jury to make inferences known to be untrue. Because Smith did not object to these closing arguments at trial, we will reverse only if there is plain error that affects his substantial rights. United States v. Robinson, 439 F.3d 777, 780 (8th Cir. 2006). Even then, we may only exercise our discretion to correct those errors that "seriously affect[] the fairness, integrity, or public reputation of judicial proceedings." United States v.

Mullins, 446 F.3d 750, 758 (8th Cir.), cert. denied, 127 S. Ct. 284 (2006). Additionally, "[w]e bear in mind that fleeting comments that passed without objection during the rough-and-tumble of closing argument in the trial court should not be unduly magnified when the printed transcript is subjected to painstaking review in the reflective quiet of an appellate judge's chambers." Id. Thus, where an arguably improper closing remark is not objected to by defense counsel, only exceptional circumstances warrant reversal. United States v. Eldridge, 984 F.2d 943, 947 (8th Cir. 1993).

Smith first argues the prosecutor improperly suggested that a spent casing from the machine gun was found on the front passenger seat of the car, and that the armrest of Smith's door contained live ammunition for the machine gun. He contends the evidence at trial established only that, after the officers removed Smith from the car, live 9-millimeter ammunition was found in *some* armrest and a spent 9-millimeter casing was found somewhere on the floor of the car.

As an initial matter, we do not read the transcript of the prosecutor's closing as broadly as does Smith. Nowhere in the transcript did we find a statement by the prosecutor that the spent casing was *on* the front passenger seat. Rather, the prosecutor stated at various times that the casing was "next to this defendant," "next to [Smith] where he was seated," and "on the floor right next to [Smith]." We are mindful that a prosecutor must limit his closing arguments to "'the evidence and reasonable inferences that may be drawn from it.'" Mullins, 446 F.3d at 760 (quoting United States v. White, 241 F.3d 1015, 1023 (8th Cir. 2001)). Nonetheless, we cannot agree that these statements, or those concerning the location of the live ammunition, go beyond the evidence presented. Deputy Swanstrom testified that the officers removed each man in turn from the car and searched his person and the area where he had been sitting. Both the casing and the ammunition were found after the officers had removed Smith from the car. The officers' search during this time was focused only on the front passenger area and, taken in this context, it is certainly reasonable

-4-

to infer that the casing was on the front passenger floorboard. Similarly, it is reasonable to infer that the live ammunition was in the armrest on Smith's door, especially since the officers presumably removed Smith from the car via that door.[2] Thus, the district court did not commit plain error in allowing these arguments.

Smith also contends the prosecutor improperly invited the jury to assume that the spent 9-millimeter casing matched the machine gun, although no ballistics tests were performed on the casing. We note, however, that the search of the car revealed two weapons and two kinds of casings: a .22 caliber rifle and a .22 caliber casing and a 9-millimeter machine gun and a 9-millimeter casing. Even without a positive ballistics test, it is reasonable to infer that the 9-millimeter casing found in the car matched the only 9-millimeter gun in the car. It was not plainly erroneous for the district court to allow this argument.

Finally, Smith argues the prosecutor improperly suggested that the 9-millimeter casing's presence in the car demonstrated that the machine gun had been fired from inside the car while Smith was sitting there. This argument is a greater stretch than the others. The presence of the 9-millimeter casing might support the inference the machine gun was fired from inside the car at some point, but Officer Freborg testified that the machine gun bore no indication of having been recently fired when he found it. Thus, it is a greater inferential leap to suggest the machine gun was fired from within the car while Smith was sitting there. Nonetheless, even if we were to

_____

[2]Smith argues that Deputy Swanstrom testified only that the live 9-millimeter ammunition was in "the armrest." Thus, he contends it is equally plausible that the ammunition was in a center console armrest, jointly accessible by Smith and the driver. He points to no evidence, however, to suggest that the car even had a center console armrest. Even assuming it did, it is reasonable to infer that the live ammunition was in the armrest on the passenger door, given that it was found while the officers had Smith, the front passenger, out of the car. Additionally, we note that in either case, the live 9-millimeter ammunition would have been "next to" Smith.

conclude that it was plain error for the district court to allow this argument, we do not believe it was so prejudicial as to deny Smith his right to a fair trial.

To show that he is entitled to plain error relief, Smith bears the burden of showing prejudice–that is, he must show "a reasonable probability that the outcome would have been different absent the alleged error." United States v. Littrell, 439 F.3d 875, 883 (8th Cir.), cert. denied, 127 S. Ct. 331 (2006). Where we conclude that prosecutorial misconduct has occurred, we examine its prejudicial impact "'by assessing the cumulative effect of the misconduct, determining if the court took any curative actions, and gauging the strength of the evidence against the defendant in the context of the entire trial.'" Id. (quoting United States v. Dominguez Benitez, 542 U.S. 74, 81-82 (2004)). In this case, we cannot conclude that this single line of argument had a great cumulative effect. After the prosecutor's closing remarks, the jury had the benefit of hearing Smith's lawyer argue vehemently against the government's position on this point in his own closing. Additionally, we note that the district court instructed the jury that statements of counsel are not evidence. As we presume that jurors follow their instructions, this buttresses our conclusion that this single comment was not unduly prejudicial to Smith. United States v. Griffith, 301 F.3d 880, 884 n.3 (8th Cir. 2002). Finally, even if we were to assume that the jury was misled by this argument, the other evidence discussed below was sufficient to sustain the jury verdict. Thus, we find that Smith cannot show actual prejudice.

In sum, whether viewed singly or in the collective, we cannot conclude under plain error review that the comments to which Smith now objects warrant the reversal of his convictions. The prosecutor primarily confined his closing arguments to the evidence and the reasonable inferences that could be drawn from it. To the extent any of his remarks went beyond that, we do not believe they so infected Smith's trial with unfairness as to deny him due process. Mullins, 446 F.3d at 762. Thus, Smith is not entitled to plain error relief.

**B.     Sufficiency of the Evidence**

Smith also challenges the evidence as insufficient to support his convictions. This court reviews whether the evidence was sufficient to support a conviction de novo.  United States v. Cruz, 285 F.3d 692, 697 (8th Cir. 2002).  When we review a guilty verdict for sufficiency of the evidence, "we view the evidence in the light most favorable to the prosecution, accepting all reasonable inferences that may be drawn in favor of the verdict."  United States v. Maloney, 466 F.3d 663, 666 (8th Cir. 2006). Smith's burden in challenging the sufficiency of the evidence is great, and "we will affirm unless no reasonable juror could have found [Smith] guilty."  Id.

To convict Smith on either count in the indictment, the government was required to prove he knowingly possessed the machine gun.[3]  The government may prove Smith's knowing possession by showing he had either "actual or constructive possession of [the machine gun], and the possession can be sole or joint."  United States v. Wells, 469 F.3d 716, 719 (8th Cir. 2006).  We have held that "an individual has constructive possession of [a firearm] if he has 'ownership, dominion or control over the [firearm], or dominion over the premises in which the [firearm] is concealed.'"  Cruz, 285 F.3d at 697 (quoting United States v. McCracken, 110 F.3d 535, 541 (8th Cir. 1997)).  Mere physical proximity to a firearm is not enough to show constructive possession, "but knowledge of [a firearm's] presence, combined with control is constructive possession."  United States v. Stevens, 439 F.3d 983, 990 (8th Cir. 2006).

---

[3]To prove Smith unlawfully possessed the machine gun, the government was required to prove that "(1) [Smith] possessed a machine gun, and (2) he did so 'knowingly.'"  United States v. Spencer, 439 F.3d 905, 915 (8th Cir. 2006).  Similarly, to prove Smith unlawfully possessed an unregistered firearm, the government was required to prove Smith knew he possessed a weapon with characteristics that made it subject to registration requirements.  See Staples v. United States, 511 U.S. 600, 619 (1994).

Smith contends that no reasonable jury could have found he constructively possessed the machine gun because there was no evidence that he knew the gun was in the car. We disagree. We note that "a jury rarely has direct evidence of a defendant's knowledge, [and] it is generally established through circumstantial evidence." United States v. Ojeda, 23 F.3d 1473, 1476 (8th Cir. 1994). Thus, the requisite knowledge can be inferred "from a defendant's presence where contraband is discovered, when combined with other evidence." Stevens, 439 F.3d at 990. We conclude there was sufficient evidence, in addition to Smith's presence in the car, from which a reasonable jury could find Smith knew the gun was present.

First, the search of the car revealed a spent 9-millimeter casing and live 9-millimeter ammunition within easy reach of Smith's seat and the machine gun was the only 9-millimeter weapon found in the car. Moreover, the government presented evidence that Smith and his brothers purchased the machine gun together in August 2005. Alexander Eichberg and Cole Frederickson testified for the government that they went to Timothy and Thomas Goodman's home in August 2005 to sell the machine gun. Their testimony established that Smith and his brothers were present during the sale, that Smith test-fired the machine gun in fully-automatic mode before any money was exchanged, and that one of Smith's brothers paid for the machine gun.[4] The fact that Smith and his brothers bought the gun together only a month earlier and were together again on a hunting trip when it was seized by police on September 28, 2005, supports the inference that all three men knew the gun was in the car on that

---

[4]Although Frederickson and Eichberg described the sale in nearly identical terms, their testimony differed as to which Goodman brother actually paid for the gun. Frederickson testified that they went to the Goodman house to sell the gun to Timmy Goodman and Timmy paid for the gun. Eichberg testified that he knew only that someone at the Goodman residence was interested in buying the gun, and Tommy Goodman actually paid for the gun. Nonetheless, both Frederickson and Eichberg identified Smith as the man who test-fired the gun before any money was exchanged.

date. These facts establish a nexus between Smith and the machine gun that goes beyond mere proximity. See United States v. Howard, 413 F.3d 861, 864 (8th Cir. 2005). Taking this evidence in the light most favorable to the jury verdict and according the government the benefit of all reasonable inferences, we find that it was sufficient to establish Smith's knowing possession of the gun.

Smith argues that the 9-millimeter casing was never shown to be from the machine gun and that he and his brothers had access to many other 9-millimeter guns that might explain the casing's presence in the car. Of course, he does not dispute that the machine gun was the only 9-millimeter weapon found in the car that day. In any event, we have held that "the presence of one possible 'innocent' explanation for the government's evidence does not preclude a reasonable jury from rejecting the exculpatory hypothesis in favor of guilt beyond a reasonable doubt." Maloney, 466 F.3d at 667. Thus, although Smith was free to present this line of argument in his defense, the jury was not required to accept it.

While the evidence of Smith's knowing possession is not overwhelming, we cannot say that no reasonable jury could have found beyond a reasonable doubt that Smith knew the machine gun was in the car.

## III.   CONCLUSION

Accordingly, the judgment of the district court is affirmed.

_____