IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
September 1, 2020 Session

## STATE OF TENNESSEE v. DOUGLAS EUGENE HORTON

**Appeal from the Circuit Court for Henderson County**
**No. 18088-1  Roy B. Morgan, Jr., Judge**

_____

### No. W2019-00948-CCA-R3-CD
_____

The Defendant-Appellant, Douglas Eugene Horton, was convicted by a Henderson County jury of nineteen counts of various drug related offenses, for which he received a total effective sentence of fifteen years' imprisonment.  On appeal, the Defendant argues that (1) the evidence is insufficient to sustain his convictions, (2) the State committed prosecutorial misconduct during closing arguments, and (3) the trial court abused its discretion in ordering partial consecutive sentencing.  Upon review, we affirm the judgments of the trial court in Counts 3, 4, 5, 6, 15, 16, 17, 18, 23, 24, 25, and 26; we reverse the judgments of the trial court in Counts 1, 2, 7, 8, 9, 10, and 31 due to insufficient evidence, and we vacate these convictions; and we remand the case to the trial court for proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed in Part, Reversed and Vacated in Part, & Remanded**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and ROBERT L. HOLLOWAY, JR., J., joined.

M. Todd Ridley, Assistant Public Defender-Appellate Division, Franklin, Tennessee, for the Defendant-Appellant, Douglas Eugene Horton.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Jody Pickens, District Attorney General; and Angela R. Scott, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

After conducting surveillance on the residence at 2825 New Flanagan Road for several months and observing the Defendant and his co-defendant, Kenneth Alan Smith,[1]

---

[1] The Defendant and co-defendant Smith were tried jointly.

at the residence, officers with the Lexington Police Department (LPD) obtained a search warrant and searched the residence. Upon entry into the residence, officers found the Defendant in the living room on the couch, but co-defendant Smith was not present during the search. After detaining the Defendant and searching the residence and the outbuilding, officers located and seized methamphetamine, hydrocodone pills, marijuana, drug paraphernalia, and several firearms. The Defendant and co-defendant Smith were arrested and indicted on the same charges related to the seized contraband. The following evidence was adduced at the Defendant's trial, which took place on November 14-15, 2018.

Investigator James Robert McCready, who, at the time of this offense, was a narcotics investigator for the City of Lexington, testified that he was the lead investigator on the Defendant's case. He began his investigation by conducting surveillance at 2825 New Flanagan Road in September 2017, which took place for "at least a couple of months[.]" While conducting surveillance, which he said took place on multiple occasions and consisted of "stationary drive[-]bys where [they] did some mild still shots[,]" he observed the Defendant and co-defendant Smith at the residence on a "regular basis." Investigator McCready observed the Defendant in the front yard of the residence and "particularly sometimes driving to the residence coming from another location but at the residence in general." He saw the Defendant driving an "older model" Chevrolet pickup truck, which was parked at the residence on the day that the search warrant was executed. Investigator McCready obtained a search warrant for the residence, and, along with several other officers, conducted a search of the residence.

Investigator McCready stated that he executed the search warrant at approximately 6:30 a.m. on November 14, 2017. Upon entry into the residence, he found the Defendant lying on a sofa in the living room wearing flannel pajama bottoms and a white t-shirt. Another officer searched the master bedroom, where he found a woman and her three minor children. The woman was arrested for possession of marijuana that was found in her purse. The woman was not charged with anything else related to the additional drugs or guns found at the residence. Co-defendant Smith was not at the residence when the officers conducted the search warrant, but he was located after the completion of the search warrant and taken into custody. Investigator McCready testified that one of the officers "brought [the Defendant] down to the ground" and secured him. Officers then conducted a "sweep of the couch cushions to make sure there [were] no firearms or anything like that," and, when they pulled back the couch cushion, officers located a "large bag of green leafy substance which had been identified as marijuana." Investigator McCready testified that he collected the evidence while other officers photographed and bagged the evidence. He identified the marijuana that he collected from the residence, and this was entered into evidence. The evidence was also submitted to the Tennessee Bureau of Investigation (TBI) for testing.

Investigator McCready also collected the following items that were located in the "heating and air return unit" inside the laundry room: methamphetamine, a small bag of marijuana, hydrocodone pills, and several items of drug paraphernalia, including a set of digital scales with residue on them, a spoon, empty sandwich baggies, empty pill bottles, and a "carrying case." The methamphetamine, marijuana, and hydrocodone were sent to the TBI for testing. Investigator McCready testified that the grate was off the unit, exposing the cooling unit. Investigator McCready also collected hydrocodone pills from the front bedroom. He stated that these were in a plastic sandwich bag, and he combined the pills found in the laundry room with the ones found in the front bedroom. Investigator McCready identified all of these items at trial, and each was entered into evidence.

Investigator McCready located a loaded Smith & Wesson revolver in the front bedroom of the residence. He said that the door to this room was not locked and that "everything [was] open in the house[.]" Investigator McCready also located a loaded, small caliber pistol from North American Arms (NAA) in the front bedroom. He located a Titan revolver in a "small outbuilding" outside the residence that he said was being used for "various barbecues and things of that nature." He said this building was part of the property covered by the search warrant. Lastly, he located a Springfield Savage Arms rifle from the front bedroom of the residence. Investigator McCready collected all of these firearms from the residence, he identified them at trial, and they were entered into evidence. None of the items were sent for fingerprint testing. Investigator McCready stated that he found the Smith & Wesson revolver on top of a "curio cabinet" in the corner of the front bedroom, and he found the Springfield rifle in the closet of that room. Investigator McCready testified that LPD Investigator Bradley Wilson collected $784 from a wallet that contained the Defendant's identification, which was found in a pair of blue jeans in the front bedroom. Investigator McCready identified a receipt from the City of Lexington Police Department documenting the collection of this money. Additionally, $200 was collected from a grey hoodie that was found on the back of the couch and held co-defendant Smith's identification. Investigator McCready believed that $40 was collected from a kitchen cabinet, and an additional $40 was collected from a cash drawer in the outbuilding. He identified a receipt from the City of Lexington Police Department documenting the collection of the additional $280.

Investigator McCready also spoke to the Defendant while the search warrant was being executed. He Mirandized the Defendant, and the Defendant said, "I just smoke my weed." However, the Defendant denied all of the allegations against him and did not claim any of the items in the house. The Defendant also told Investigator McCready that he was not working at that time. Co-defendant Smith did not give a statement. The Defendant and co-defendant Smith were both charged with the same offenses related to the drugs and firearms.

On cross-examination, Investigator McCready stated that he did not have any evidence regarding the Defendant's whereabouts prior to when he started surveillance at the residence in September 2017. Based on his surveillance, he concluded that the Defendant lived at the residence. Investigator McCready could not recall if the Defendant was lying down or sitting on the couch when he entered the residence, but he observed a blanket and a pillow on the couch and believed the Defendant was startled when they entered. Investigator McCready discovered the bag of marijuana when he pulled up on the far left couch cushion. He said the marijuana was in "plain view" after he removed the cushion and stated, "If you were seated in a seat on a sofa, it would be down basically at your right hip in a corner." He agreed that someone sitting on the couch would not be able to feel the bag of marijuana through the couch cushion.

Investigator McCready did not conduct any tests on the evidence while at the residence. He stated that the methamphetamine, and the other evidence located in the same area, were "in the back of the heating unit[,]" but he also said, "Well it was in plain view because the cover that goes over the heating and air unit was missing. I mean, you could easily walk by and see it." He said the evidence was found inside a blue bank bag and agreed that someone would have to "open [the] bag to know what its contents were." Investigator McCready stated that approximately twenty hydrocodone pills were located in the laundry room heating and air unit, and, combined with the hydrocodone pills found in the front bedroom, he collected a total of fifty-nine hydrocodone pills. The hydrocodone pills found in the front bedroom were located in a medicine bag that also contained "a bunch of medication that had [the Defendant's] name on it[.]" Investigator McCready said most of the other medication in the bag "looked like blood pressure medication, cholesterol pills, and things of that nature[,]" so he did not seize it as evidence. He said that the curio cabinet that the Smith & Wesson revolver was found on top of was "about six [feet] [tall][,]" and he had to "peek over it to see inside of it." He agreed that he did not have any evidence showing that the cash collected from the residence was used in the sale of narcotics. He also agreed that he located "general labor tools" at the residence and that the Defendant complained of health issues during the execution of the search warrant.

Investigator McCready stated that the only indicia of ownership of any of the evidence seized pertained to the location where the evidence was found. He said the names had been scratched off the pill bottles that they seized, so he could not determine to whom they belonged. He believed that the master bedroom at the back of the residence was co-defendant Smith's room, which he shared with a woman. He did not find any contraband or firearms in co-defendant Smith's room. Investigator McCready determined that the residence belonged to co-defendant Smith, although he did not specify whether he rented or owned the property. He did not believe that the woman and three juveniles located at the residence lived there but only that they were "passing by" on their way to visit relatives. Investigator McCready did not locate any ledgers indicating the sale of drugs, and he did

not seize any cell phones from the residence. On redirect examination, Investigator McCready said that he discovered a title to a vehicle with the Defendant's name on it in the front bedroom. On recross examination, Investigator McCready stated that there was no bed in the front bedroom, and he was unsure if there was any mail addressed to the Defendant in that room. He said that the blue jeans that contained the Defendant's wallet were wadded up in a pile of clothes on the floor, and he observed a stack of photographs on the floor, leading him to believe that someone had just moved into the room.

The State recalled Investigator McCready, and he identified the photographs taken by Captain Jeff Middleton. The photographs depicted the following evidence: the entryway into the residence depicting the couch where the Defendant was sitting; the cushions of the couch pulled off, showing the bag of marijuana; the heating and air unit located in a hallway going into the laundry room containing a blue bag that held the methamphetamine, hydrocodone pills, marijuana, and drug paraphernalia; the curio cabinet where the Smith & Wesson revolver was found; the bag containing the Defendant's prescription medication and the hydrocodone pills; the pair of blue jeans holding the Defendant's wallet and cash; the NAA pistol found in the Defendant's blue jeans; various pieces of mail addressed to co-defendant Smith and cash and a pill bottle that were found in co-defendant Smith's jacket; multiple vehicle titles belonging to the Defendant and co-defendant Smith; an open view of the laundry room; and the Titan revolver found in the outbuilding. Investigator McCready stated that, after he collected the evidence, he transported it to the evidence room at the LPD. On cross-examination, Investigator McCready conceded that the curio cabinet where the Smith & Wesson revolver was located was not "necessarily" visible to someone of average height and that he did not locate this firearm until later into the search. Although he observed female clothing in the master bedroom, he could not recall if there was female clothing in the front bedroom. Investigator McCready stated that he had observed the Defendant driving a vehicle, which, according to the title, belonged to another individual. Investigator McCready was confident that the woman at the residence during the search warrant did not live there, and he was aware that another woman had recently moved out of the house. He said that there was no possibility that any of the evidence was moved while the search warrant was being conducted. He did not recall seeing any mail addressed to the Defendant at the residence. Investigator McCready said he was wearing a body cam during the execution of the search warrant. Although he searched some of the vehicles on the property, he did not find any contraband in the vehicles.

Investigator McCready was recalled by co-defendant Smith, and he again identified a photograph of the heating and cooling system in the laundry room. He agreed that he previously testified that the blue bag containing the narcotics and drug paraphernalia was in plain view, but he agreed that the photograph did not depict this view. He said, "No, but when you walk by at eye level, you know, you look in there, you can see it." He also said

that, based on his previous investigations, he knew where this bag was, so, "when [he] walked by, [he] went immediately to it." He agreed that his body camera could have reflected that he "walked by it about four times before [he] went to it and [he] searched the rest of the room before [he] went to it" and that he "searched some other rooms prior to going to this." On cross-examination by the State, Investigator McCready stated that he did several preliminary sweeps of the residence prior to collecting any evidence. On redirect examination, he agreed that his body camera footage showed that 20 minutes and 32 seconds elapsed from the time he arrived on the scene until the time that he went to this location in the laundry room.

Investigator Wilson assisted in executing the search warrant at 2825 New Flanagan Road. He searched the blue jeans found in the front bedroom that contained that Defendant's identification and the cash that was collected from the wallet. He also located a clear bag with white tablets in it, and he turned these items over to Investigator McCready. Sergeant Michael Steven Clark of the Henderson County Sheriff's Office (HCSO) also assisted in the execution of the search warrant, where he searched the outbuilding and located the Titan Revolver and cash from a register. He stated that this outbuilding was locked when he arrived, and he believed that food could have been previously sold out of the building. LPD Captain Jeff Middleton also participated in the execution of the search warrant and took photographs which were entered into evidence. Captain Middleton also testified about the LPD's protocol for logging and storing evidence. On cross-examination, Captain Middleton stated that he was not involved in the transportation of the drug evidence in this case, and he did not participate in the underlying investigation prior to the execution of the search warrant.

TBI Special Agent Carter Dupew tested the evidence in this case and presented the following results: 2.99 grams of methamphetamine, 47.60 grams of marijuana, and hydrocodone. He also received an additional 11.46 grams of a plant material, but he did not analyze this material. He tested one tablet of hydrocodone, although he received nine tablets. His report was entered into evidence. LPD Investigator Ricky Montgomery, who testified as an expert in drug trafficking and narcotics investigations in Henderson County, Tennessee, stated that he transported the drugs to the lab in this case. He testified that a gram of methamphetamine typically sold for $100 in Henderson County, and an ounce of marijuana typically sold for $100. He stated that the hydrocodone pills that were collected in this case were 7.5 milligrams each, which typically sold for $7 to $10 dollars a piece, depending on the quantity of pills sold. Investigator Montgomery testified generally about indicators that methamphetamine was being possessed in order to be sold, including the preparation and packaging and the presence of firearms and drug paraphernalia used for packaging and redistributing narcotics. He said that people often pay for drugs with cash, but they also often trade property, including vehicles. He opined that the narcotics in this case were being possessed for distribution, not consumption, partially because he did not

locate any drug paraphernalia at the residence indicating drug use. Following this testimony, the State rested. The Defendant did not present any evidence on his own behalf.

Following deliberations, the jury convicted the Defendant of possession of methamphetamine, hydrocodone, and marijuana with intent to sell (Count 1, 3, and 5), facilitation of possession of methamphetamine, hydrocodone, and marijuana with intent to deliver (Count 2, 4, and 6), six counts of possession of a firearm with the intent to go armed during the commission of a dangerous felony (Counts 9, 10, 17, 18, 25, and 26), six counts of facilitation of possession of a firearm with the intent to go armed during the commission of a dangerous felony (Counts 7, 8, 15, 16, 23, and 24), and one count of possession of drug paraphernalia (Count 31). We have reproduced the Defendant's chart summarizing his charges, convictions, and sentence:

| COUNT | CHARGE | RESULT | SENTENCE |
|---|---|---|---|
| 1 | Possession of Methamphetamine with Intent to Sell | Guilty | 10 years |
| 2 | Possession of Methamphetamine with Intent to Deliver | Guilty of Lesser-Included Facilitation (Merged w/ Count 1) | |
| 3 | Possession of Schedule II (Hydrocodone) with Intent to Sell | Guilty | 6 years (concurrent with Count 1) |
| 4 | Possession of Schedule II (Hydrocodone) with Intent to Deliver | Guilty of Lesser-Included Facilitation (Merged w/ Count 3) | |
| 5 | Possession of Marijuana with Intent to Sell | Guilty | 2 years (concurrent with Counts 1 and 3) |
| 6 | Possession of Marijuana with Intent to Deliver | Guilty of Lesser-Included Facilitation (Merged w/ Count 5) | |
| 7 | Possession of Firearm (Smith & Wesson Revolver) with Intent to Go Armed During Dangerous Felony (Possession of Methamphetamine with Intent to Sell) | Guilty of Lesser-Included Facilitation | 2 years (consecutive to Count 1) |
| 8 | Possession of Firearm (Smith & Wesson Revolver) with Intent to Go Armed During Dangerous Felony (Possession of | Guilty of Lesser-Included Facilitation | 2 years (consecutive to Count 2) |

| | | | |
|---|---|---|---|
| | Methamphetamine with Intent to Deliver) | | |
| 9 | Possession of Firearm (NAA Pistol) with Intent to Go Armed During Dangerous Felony (Possession of Methamphetamine with Intent to Sell) | Guilty | 3 years (consecutive to Count 1) |
| 10 | Possession of Firearm (NAA Pistol) with Intent to Go Armed During Dangerous Felony (Possession of Methamphetamine with Intent to Deliver) | Guilty | 3 years (consecutive to Count 2) |
| 11 | Possession of Firearm (Titan Revolver) with Intent to Go Armed During Dangerous Felony (Possession of Methamphetamine with Intent to Sell) | Not Guilty | |
| 12 | Possession of Firearm (Titan Revolver) with Intent to Go Armed During Dangerous Felony (Possession of Methamphetamine with Intent to Deliver) | Not Guilty | |
| 13 | Possession of Firearm (Springfield Rifle) with Intent to Go Armed During Dangerous Felony (Possession of Methamphetamine with Intent to Sell) | Not Guilty | |
| 14 | Possession of Firearm (Springfield Rifle) with Intent to Go Armed During Dangerous Felony (Possession of Methamphetamine with Intent to Deliver) | Not Guilty | |
| 15 | Possession of Firearm (Smith & Wesson Revolver) with Intent to Go Armed During | Guilty of Lesser-Included Facilitation | 2 years (consecutive to Count 3) |

| | | | |
|---|---|---|---|
| | Dangerous Felony (Possession of Hydrocodone with Intent to Sell) | | |
| 16 | Possession of Firearm (Smith & Wesson Revolver) with Intent to Go Armed During Dangerous Felony (Possession of Hydrocodone with Intent to Deliver) | Guilty of Lesser-Included Facilitation | 2 years (consecutive to Count 4) |
| 17 | Possession of Firearm (NAA Pistol) with Intent to Go Armed During Dangerous Felony (Possession of Hydrocodone with Intent to Sell) | Guilty | 3 years (consecutive to Count 3) |
| 18 | Possession of Firearm (NAA Pistol) with Intent to Go Armed During Dangerous Felony (Possession of Hydrocodone with Intent to Deliver) | Guilty | 3 years (consecutive to Count 4) |
| 19 | Possession of Firearm (Titan Revolver) with Intent to Go Armed During Dangerous Felony (Possession of Hydrocodone with Intent to Sell) | Not Guilty | |
| 20 | Possession of Firearm (Titan Revolver) with Intent to Go Armed During Dangerous Felony (Possession of Hydrocodone with Intent to Deliver) | Not Guilty | |
| 21 | Possession of Firearm (Springfield Rifle) with Intent to Go Armed During Dangerous Felony (Possession of Hydrocodone with Intent to Sell) | Not Guilty | |

| | | | |
|---|---|---|---|
| 22 | Possession of Firearm (Springfield Rifle) with Intent to Go Armed During Dangerous Felony (Possession of Hydrocodone with Intent to Deliver) | Not Guilty | |
| 23 | Possession of Firearm (Smith & Wesson Revolver) with Intent to Go Armed During Dangerous Felony (Possession of Marijuana with Intent to Sell) | Guilty of Lesser-Included Facilitation | 2 years (consecutive to Count 5) |
| 24 | Possession of Firearm (Smith & Wesson Revolver) with Intent to Go Armed During Dangerous Felony (Possession of Marijuana with Intent to Deliver) | Guilty of Lesser-Included Facilitation | 2 years (consecutive to Count 6) |
| 25 | Possession of Firearm (NAA Pistol) with Intent to Go Armed During Dangerous Felony (Possession of Marijuana with Intent to Sell) | Guilty | 3 years (consecutive to Count 5) |
| 26 | Possession of Firearm (NAA Pistol) with Intent to Go Armed During Dangerous Felony (Possession of Marijuana with Intent to Deliver) | Guilty | 3 years (consecutive to Count 6) |
| 27 | Possession of Firearm (Titan Revolver) with Intent to Go Armed During Dangerous Felony (Possession of Marijuana with Intent to Sell) | Not Guilty | |
| 28 | Possession of Firearm (Titan Revolver) with Intent to Go Armed During Dangerous | Not Guilty | |

| | | | |
|---|---|---|---|
| | Felony (Possession of Marijuana with Intent to Deliver) | | |
| 29 | Possession of Firearm (Springfield Rifle) with Intent to Go Armed During Dangerous Felony (Possession of Marijuana with Intent to Sell) | Not Guilty | |
| 30 | Possession of Firearm (Springfield Rifle) with Intent to Go Armed During Dangerous Felony (Possession of Marijuana with Intent to Deliver) | Not Guilty | |
| 31 | Possession of Drug Paraphernalia | Guilty | 11 months 29 days |
| | | | **Total: 15 years** |

The trial court held a sentencing hearing on February 15, 2019, during which the State entered the Defendant's presentence report as an exhibit to the hearing. As reflected above, the trial court merged Count 2 into Count 1 and sentenced the Defendant to ten years' imprisonment for Count 1, merged Count 4 into Count 3 and sentenced the Defendant to six years for Count 3, and merged Count 6 into Count 5 and sentenced the Defendant to two years for Count 5. The trial court ran these counts concurrently for a sentence of ten years' imprisonment. In Counts 7, 8, 15, 16, 23, and 24, the trial court ordered two-year sentences to be served concurrently to each other but consecutively to the underlying felonies, and in Counts 9, 10, 17, 18, 25, and 26, the trial court ordered three-year sentences to also be served concurrently to each other but consecutively to the underlying felonies. Lastly, the trial court ordered a sentence of eleven months and twenty-nine days for Count 31 to run concurrently to all other counts, for a total effective sentence of fifteen years' imprisonment. On May 10, 2019, the trial court held a hearing on the Defendant's motion for new trial and subsequently denied the motion by written order. The Defendant filed a timely notice of appeal, and his case is now properly before this Court for our review.

## ANALYSIS

**I. Sufficiency of the Evidence.**[2] The Defendant challenges the sufficiency of the evidence as it relates to each of his convictions. First, the Defendant argues that the evidence is insufficient to support his drug possession convictions (Count 1, 3, 5 and 31) because there was no evidence that he was in actual or constructive possession of the drugs or the drug paraphernalia found at the residence. He contends, "Rather than tying [him] to the contraband, the State relied exclusively on his presence in the residence and his physical proximity to the contraband[,]" which he asserts, according to case law, is not enough. At oral argument and in his brief, the Defendant admitted that the possession of the marijuana and the hydrocodone "present[ed] a closer question" as to sufficiency than the methamphetamine and drug paraphernalia. Next, the Defendant contends, that if this Court finds the evidence insufficient to support his drug convictions, then his convictions for possession of a firearm with the intent to go armed during the commission of a dangerous felony (Counts 9, 10, 17, 18, 25, and 26) must be reversed. He states, "Without [his drug possession] convictions, there is no remaining basis for him to remain imprisoned for the perfectly legal act of carrying a firearm." Lastly, the Defendant asserts that his drug facilitation convictions (Counts 2, 4, and 6) and his convictions for facilitation of possession of a firearm with the intent to go armed during the commission of a dangerous felony (Counts 7, 8, 15, 16, 23, and 24) must be reversed as well. He states, "There is no evidence, or even suggestion by the proof, that [he] solicited, directed, aided, or even attempted to aid another person to commit the offense of selling or delivering drugs or illegally possessing a firearm." In response, the State contends that the evidence was "more than sufficient" to sustain all of his convictions.

"Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the criminal defendant bears the burden on appeal of showing that the evidence was legally insufficient to sustain a guilty verdict." State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009) (citing State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992)). "Appellate courts evaluating the sufficiency of the convicting evidence must determine 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" State v. Wagner, 382 S.W.3d 289, 297 (Tenn. 2012) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)); see Tenn. R. App. P. 13(e). When this court evaluates the sufficiency of the evidence on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. State v. Davis, 354 S.W.3d 718, 729 (Tenn. 2011) (citing State v. Majors, 318 S.W.3d 850, 857 (Tenn. 2010)).

---

[2] In his brief, the Defendant addresses the sufficiency of the evidence related to separate convictions as issues one through three, but we have consolidated these into one section for the purposes of this appeal.

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Sutton, 166 S.W.3d 686, 691 (Tenn. 2005); State v. Hall, 976 S.W.2d 121, 140 (Tenn. 1998). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. State v. Campbell, 245 S.W.3d 331, 335 (Tenn. 2008) (citing Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence, and the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury. Dorantes, 331 S.W.3d at 379 (citing State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006)). When considering the sufficiency of the evidence, this court "neither re-weighs the evidence nor substitutes its inferences for those drawn by the jury." Wagner, 382 S.W.3d at 297 (citing State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997)).

For Counts 1 through 6, the State was required to prove beyond a reasonable doubt that the Defendant knowingly possessed methamphetamine, a Schedule II controlled substance (Counts 1 and 2), hydrocodone, a Schedule II controlled substance (Counts 3 and 4), and marijuana, a Schedule VI controlled substance (Counts 5 and 6), with the intent to sell or deliver those substances. Tenn. Code Ann. §§ 39-17-408(b)(1)(F); 39-17-408(d)(2); 39-17-415(a)(1); 39-17-417(a)(4); 39-17-434(a)(4). For Count 31, the State was required to prove beyond a reasonable doubt that the Defendant unlawfully, intentionally, knowingly, and/or recklessly used and/or possessed with the intent to use drug paraphernalia. Tenn. Code Ann. § 39-17-425(a)(1).

We note that a person may possess contraband alone or jointly with others. State v. Richards, 286 S.W.3d 873, 885 (Tenn. 2009) (citations omitted); State v. Copeland, 677 S.W.2d 471, 476 (Tenn. Crim. App. 1984). In addition, "[p]ossession may be actual or constructive." State v. Robinson, 400 S.W.3d 529, 534 (Tenn. 2013) (citing State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001)). Because none of the contraband in this case was found on the Defendant's person, the State was required to prove constructive possession. Constructive possession is established when a person has "'the power and the intention at a given time to exercise dominion and control over an object, either directly or through others.'" State v. Williams, 623 S.W.2d 121, 125 (Tenn. Crim. App. 1981) (quoting United States v. Craig, 522 F.2d 29, 32 (6th Cir. 1975)). It has also been defined as "'the ability to reduce an object to actual possession.'" Id. (quoting United States v. Martinez, 588 F.2d 495, 498 (5th Cir. 1979)). Constructive possession depends on the totality of the circumstances in each case and may be established through circumstantial evidence. Robinson, 400 S.W.3d at 534 (citing Tenn. Code Ann. § 39-17-419). The mere presence

- 13 -

of a person in an area where drugs are found is not, by itself, sufficient to support a finding of constructive possession. Id. (citing State v. Bigsby, 40 S.W.3d 87, 90 (Tenn. Crim. App. 2000)). In addition, an individual's mere association with a person in control of the drugs or the property where the drugs are found is not enough to support a finding of knowing possession. Id. (citing State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987)).

For Counts 7 through 30, the State was required to prove beyond a reasonable doubt that the Defendant possessed a firearm with the intent to go armed during the commission of or attempt to commit a dangerous felony. Tenn. Code Ann. § 39-17-1324(a). "Dangerous felony" means a felony involving the sale, manufacture, distribution or possession with intent to sell, manufacture or distribute a controlled substance or controlled substance analogue defined in part 4 of this chapter. Tenn. Code Ann. § 39-17-1324(i)(1)(L). A person is criminally responsible for the facilitation of a felony, if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony. Tenn. Code Ann. § 39-11-403(a).

Turning to the facts of this case, officers conducted a search warrant in the early morning hours of November 14, 2017, at 2825 New Flanagan Road, a residence which they had been surveilling for several months and at which they had observed both the Defendant and co-defendant Smith. Upon entry into the residence, officers found the Defendant on the couch with a blanket and pillow and wearing what appeared to be his pajamas. Officers secured the Defendant and the residence, during which they located a woman and three minor children in the master bedroom. The woman was subsequently arrested and charged with possession of marijuana, which was found in her purse, but she was not charged for any of the other contraband found at the residence. Co-defendant Smith was not present at the residence during the execution of the search warrant, but he was later located and charged identically to the Defendant. Other than the testimony that the Defendant had been observed at the residence during the surveillance period and a few personal items belonging to the Defendant found at the residence, there was no proof establishing that the Defendant lived at the residence. Although Investigator McCready believed that the Defendant stayed in the front bedroom, he testified that there was no bed in this room and could only link a pair of blue jeans, a medicine bag, and a car title found in that room to the Defendant. The State also presented no proof of the relationship between the Defendant and co-defendant Smith, other than the fact that they were both observed at this residence.

As it relates to the drugs located and seized from the residence, the officers located the blue bag containing methamphetamine, a small bag of marijuana, hydrocodone pills, and several items of drug paraphernalia from the "heating and air return unit" inside the laundry room. Although Investigator McCready stated that these items were in "plain view" because the cover of the heating and air unit was missing, he also agreed that the

- 14 -

items were "in the back of the heating unit[,]" and were found inside a blue bank bag. Additionally, he agreed that someone would have to "open [the] bag to know what its contents were." Unlike the evidence that was seized from the front bedroom, which officers tied to the Defendant through the presence of his personal belongings, there was no "indicia of ownership" tying the Defendant to any of the remaining items or the rest of the residence. Upon further questioning, Investigator McCready agreed that the photograph entered into evidence depicting the location of the blue bank bag did not appear to be in plain view. Investigator McCready agreed that he knew where this bag was based on his previous investigations; however, he agreed that his body camera footage showed that he walked by this location about four times before collecting this evidence. The State presented no additional evidence linking the Defendant to these items.

Accordingly, other than the Defendant's presence in the home where the contraband was found, there was no proof to establish a link between the Defendant and the contraband hidden in the heating unit. As we noted previously, mere proximity or presence to seized contraband is not sufficient to establish actual or constructive possession. See State v. Silio Hilerio-Alfaro, No. W2013-01819-CCA-R3-CD, 2014 WL 6483263, at *5 (Tenn. Crim. App. Nov. 19, 2014) (concluding that "the sum total of the State's proof establishing constructive possession was that a detective saw the driver and the [defendant] 'moving' in the area of the console when the detective activated his blue lights[]"); State v. Nicholaus Jones, No. W2018-01421-CCA-R3-CD, 2020 WL 974197, at *10 (Tenn. Crim. App. Feb. 27, 2020) (concluding that the evidence was insufficient to support the defendant's convictions when the police did not find any contraband on the defendant's person, fingerprint analysis was not conducted on any of the items seized, and the State did not present any proof of who rented the room or how long the defendant stayed there.) Although we acknowledge the amount of drugs and money and the type of drug paraphernalia found in this case is sufficient to establish intent to sell or deliver, evidence of intent does not assist the trier of fact in determining whether the Defendant constructively possessed the contraband. See Silio Hilerio-Alfaro, 2014 WL 6483263, at *5. As such, we conclude as a matter of due process, see Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781 (1979), there was no evidence in this case from which a jury could infer that the Defendant constructively possessed the contraband that was found in the heating and air unit. Therefore, we reverse the judgments of the trial court as it relates to Count 1 for possession of methamphetamine with the intent to sell and Count 31 for possession of drug paraphernalia and vacate these convictions.[3]

---

[3] We acknowledge that a small bag of marijuana and some of the hydrocodone pills were also found in the blue bag in the heating and air unit; however, no evidence was presented that the small bag of marijuana was combined with the large bag found under the couch to reach the amount of 47.06 grams, and, although the hydrocodone pills in the blue bag were combined with the pills found in the front bedroom, the evidence supports the Defendant's conviction for possession of the hydrocodone pills in the front bedroom.

As the Defendant concedes in his brief and at his oral argument, "the marijuana and [hydrocodone] present a closer question than the methamphetamine and paraphernalia." When officers conducted a "sweep of the couch cushions [where the Defendant was sitting] to make sure there [were] no firearms or anything like that," they located a "large bag of green leafy substance which had been identified as marijuana." Although Investigator McCready agreed that someone sitting on the couch would not be able to feel the bag of marijuana through the couch cushion, he also said that if someone was seated on the couch, "[the bag of marijuana] would be down basically at [his] right hip in a corner." The majority of the hydrocodone pills were found in the front bedroom, which officers believed was the Defendant's room, in a medicine bag that also contained "a bunch of medication that had [the Defendant's] name on it[.]" Officers also found a pair of blue jeans in the front bedroom, in which they found a wallet containing the Defendant's identification and $784. Based on the totality of the circumstances, including the hydrocodone pills being mixed in with the Defendant's possessions and the bag of marijuana being found where the Defendant was sitting or sleeping, we conclude that the evidence is sufficient to establish that the Defendant constructively possessed the bag of marijuana found under the couch cushion (Count 3) and the hydrocodone pills found in the front bedroom (Count 5).

Next, we must address the sufficiency of the evidence as it relates to the Defendant's facilitation convictions in Counts 2, 4, 6, 7, 8, 15, 16, 23, and 24. When convicted of a lesser-included offense, the proof must be sufficient to support each and every element of the convicted offense to sustain a conviction. State v. Dwight Twarn Champion, No. W2019-00230-CCA-R3-CD, 2020 WL 504826, at *5 (Tenn. Crim. App. Jan. 30, 2020), perm. app. denied (June 5, 2020) (citing State v. Edward Lephanna Kilcrease, No. M2013-00515-CCA-R3-CD, 2014 WL 2832624, at *4 (Tenn. Crim. App. June 20, 2014); State v. Parker, 350 S.W.3d 883, 909 (Tenn. 2001), perm. app. denied (Tenn. June 20, 2014)). "If every element is not supported by sufficient proof, the defendant is entitled to a reversal of the conviction." Id. (citing Parker, 350 S.W.3d at 909). The fact "that the proof may support conviction of a different, even 'greater' offense does not [remove] the constitutional requirement that the proof support each and every element of the offense for which the defendant was actually convicted." Id. (citing Edward Lephanna Kilcrease, 2014 WL 2832624, at *4 (quoting State v. Jeremy Wendell Thorpe, No. M2012-02676-CCA-R3-CD, 2013 WL 5436701 (Tenn. Crim. App. Sept. 27, 2013), perm. app. granted (Tenn. Feb. 11, 2014))).

We have previously discussed the facts surrounding the Defendant's convictions related to the possession of methamphetamine, hydrocodone, and marijuana. Counts 7, 8, 15, 16, 23, and 24 represent the Defendant's convictions for facilitation of possession of a

firearm, specifically the Smith & Wesson revolver, with the intent to go armed during the commission of or attempt to commit a dangerous felony. This firearm was collected from the front bedroom on top of a "curio cabinet" which was about six feet tall. For the same reasons articulated above, we reverse and vacate the Defendant's conviction in Count 2 for facilitation of possession of methamphetamine with the intent to deliver but affirm his convictions in Counts 4 and 6, for facilitation of possession of hydrocodone and marijuana with the intent to deliver, respectively. Given the evidence surrounding the Defendant's possession of the marijuana and the hydrocodone, a jury could rationally conclude that the Defendant "knowingly furnishe[d] substantial assistance" in the possession of these substances with the intent to deliver them. Because we have reversed and vacated the Defendant's convictions in Counts 1 and 2, his convictions in Counts 7 and 8, where the underlying dangerous felonies supporting these convictions were the possession of methamphetamine with the intent to sell and deliver are also reversed and vacated. Because we have affirmed the Defendant's convictions in Counts 3, 4, 5, and 6, we also affirm his convictions in Counts 15, 16, 23, and 24, where the underlying dangerous felonies supporting these convictions were the possession of hydrocodone and marijuana with the intent to sell and deliver.

Lastly, we must address the sufficiency of the evidence surrounding the Defendant's convictions for possession of a firearm, specifically the NAA pistol, with the intent to go armed during the commission of or attempt to commit a dangerous felony (Counts 9, 10, 17, 18, 25, and 26). The NAA pistol was found in the Defendant's blue jeans with his wallet and cash, and he conceded that this firearm belonged to him. Because we have reversed and vacated the Defendant's convictions in Counts 1 and 2 for the reasons previously discussed, the Defendant's convictions in Counts 9 and 10 must be reversed and vacated. Because we affirmed the Defendant's convictions in Counts 3, 4, 5, and 6 for the reasons previously discussed, we also affirm his convictions in Counts 17, 18, 25, and 26.

In summary, we reverse the judgments of the trial court and vacate the Defendant's convictions in Counts 1, 2, 7, 8, 9, 10, and 31, and we affirm his convictions in Counts 3, 4, 5, 6, 15, 16, 17, 18, 23, 24, 25, and 26.

**II. Prosecutorial Misconduct during Closing Arguments.** Next, the Defendant argues that the State committed prosecutorial misconduct in its closing argument by "blatantly misstating the evidence that had been presented" and "attempt[ing] . . . to inflame the jury towards a conviction." He concedes that he did not object to the State's comment at trial, but he insists that he is entitled to plain error relief. The State responds that the prosecutor did not commit prosecutorial misconduct and that the Defendant is not entitled to plain error relief. We agree with the State.

The Defendant objects to the following comments made by the State during closing arguments: "This is a drug store. You just order what you want and it's ready to go[,]" and "This was a drug house operating in Henderson County." The Defendant also objects to the State's characterization of the residence as a "ready-to-go drugstore."

The Tennessee Supreme Court has repeatedly noted that "[c]losing argument is a valuable privilege that should not be unduly restricted." State v. Stephenson, 195 S.W.3d 574, 603 (Tenn. 2006) (citing State v. Bane, 57 S.W.3d 411, 425 (Tenn. 2001)). The trial court has substantial discretion in controlling the course of arguments and will not be reversed unless there is an abuse of that discretion. Id. In addition, prosecutorial misconduct does not constitute reversible error absent a showing that it has affected the outcome of the trial to the prejudice of the defendant. Id. (citing Terry v. State, 46 S.W.3d 147, 156 (Tenn. 2001)). However, an attorney's comments during closing argument "'must be temperate, must be predicated on evidence introduced during the trial of the case, and must be pertinent to the issues being tried.'" State v. Gann, 251 S.W.3d 446, 459 (Tenn. Crim. App. 2007) (quoting State v. Sutton, 562 S.W.2d 820, 823 (Tenn. 1978)). In order to be entitled to relief on appeal, the defendant must "show that the argument of the prosecutor was so inflammatory or the conduct so improper that it affected the verdict to his detriment." State v. Farmer, 927 S.W.2d 582, 591 (Tenn. Crim. App. 1996). This court must consider the following factors when determining whether the argument of the prosecutor was so inflammatory or improper to negatively affect the verdict:

(1) the conduct complained of viewed in the light of the facts and circumstances of the case; (2) the curative measures undertaken by the court and the prosecution; (3) the intent of the prosecutor in making the improper arguments; (4) the cumulative effect of the improper conduct and any other errors in the record; and (5) the relative strength and weakness of the case.

State v. Chalmers, 28 S.W.3d 913, 917 (Tenn. 2000) (citations omitted).

The Defendant's failure to object to these comments limits our review of this issue to plain error. Tenn. R. App. P. 36(b); State v. Pack, 421 S.W.3d 629, 648 (Tenn. Crim. App. 2013) (holding that because the defendant failed to make a contemporaneous objection during closing arguments, he not only had to establish that the comments were improper but also that they constituted plain error). It is well recognized that a defendant's failure to object to a prosecutor's comments during closing argument rarely results in a reversal of the conviction. See United States v. Smith, 508 F.3d 861, 864 (8th Cir. 2007).

The plain error doctrine states that "[w]hen necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at

any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal." Tenn. R. App. P. 36(b). In order for this court to find plain error,

> (a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is "necessary to do substantial justice."

State v. Smith, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). "It is the accused's burden to persuade an appellate court that the trial court committed plain error." State v. Bledsoe, 226 S.W.3d 349, 355 (Tenn. 2007) (citing U.S. v. Olano, 507 U.S. 725, 734 (1993)). "[T]he presence of all five factors must be established by the record before this Court will recognize the existence of plain error, and complete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established." Smith, 24 S.W.3d at 283.

We conclude that the Defendant has not shown that consideration of this error is "necessary to do substantial justice." We discussed the sufficiency of the evidence at length in the previous section, and, although we concluded that the State failed to prove that the Defendant constructively possessed the methamphetamine and the drug paraphernalia, the proof established that the Defendant was sitting on the couch where the bag of marijuana was found, and the hydrocodone pills were found in a medicine bag with other prescriptions belonging to the Defendant. Also in the room with the medicine bag was a pair of blue jeans containing the Defendant's identification, $784, and a firearm. Based on the evidence presented at trial, there was ample evidence for the jury to conclude that the Defendant possessed the marijuana and hydrocodone in order to sell them. Accordingly, because the Defendant has failed to establish all five factors required for plain error, he is not entitled to relief on this issue.

**III. Sentencing.** Lastly, the Defendant asserts that the trial court abused its discretion in "order[ing] [the Defendant's] firearm sentences to be served consecutive[ly] to each other because it erroneously applied the factors governing the necessity of confinement rather than the factors governing consecutive sentencing." The Defendant asks this Court to order his sentences to run concurrently, which would "lead to a net reduction of two years from [his] total sentence." The State concedes that the trial court relied on an erroneous standard in aligning the sentences for the Defendant's firearm convictions. In addition, the State raises several issues that the Defendant did not address in his initial brief, including that (1) the trial court erroneously "concluded [that] the sentences for the gun facilitation convictions (for the Smith & Wesson revolver) were

required by law to run consecutively to the underlying drug convictions[;]" (2) the judgment forms do not align with the sentences that the trial court ordered; and (3) the Defendant's firearm convictions "may violate the rule against multiplicity, and the trial court probably should have merged the convictions into just three surviving convictions for each gun (one for each drug)." The State urges this Court to remand the case to the trial court to consider these issues "given the current record and the multiple issues to be corrected."

In determining the Defendant's sentence in this case, the trial court relied on the presentence report, the "nature and the circumstances" of the Defendant's convictions, the Defendant's prior criminal record, and his mental state at the time of the offenses. The trial court found that the Defendant's convictions related to his possession of a firearm were mandated by statute to run consecutively to the underlying convictions. In determining whether the convictions for possession of a firearm would run consecutively or concurrently to the convictions for facilitation of possession of a firearm, the trial court reasoned as follows:

> And then the possession of the firearms themselves, the 3-year sentences, they're all concurrent with each other, but I have to deal with consecutive sentencing for the appropriate counts on the underlying convictions there. I find that to be the law. And if you total that up, the 10s, plus the 2s, plus the 3s, knowing what is concurrent by Court ruling but consecutive by statute, you've got a total effective sentence of 15 years because I am ordering that the possessions be consecutive to the 2-year sentences where it's facilitation. I find under the law that is necessary for -- I don't have the statute in front of me. But it's necessary that we not take away the seriousness of the convictions, and it's a necessary sentence to deter others from committing these type offenses. Again, I don't have the statute exactly in front of me, but we're doing it and making those specific findings on deterrence value and not to take away from the seriousness of these offenses. And I also think that consecutive sentencing is necessary as I've ordered the 3 years to the 2 years to make the total effective sentence of 15 years because that better reflects the proper sentence and the seriousness of the crimes. And again, I'm paraphrasing the statutory language because, I apologize, I don't have it right in front of me. But to give a more accurate sentence as to these particular offenses involved for purposes of consecutive sentence, that would be an appropriate factor also. So you've got a total effective sentence of 15 years with different release eligibility dates; 10 years at 30 percent, 2 years at 100 percent and then 3 years at 100 percent.

Where a defendant is convicted of one or more offenses, the trial court has discretion to decide whether the sentences shall be served concurrently or consecutively. Tenn. Code Ann. § 40-35-115(a) (2006). The Tennessee Supreme Court has held, "[T]he abuse of discretion standard, accompanied by a presumption of reasonableness, applies to consecutive sentencing determinations." State v. Pollard, 432 S.W.3d 851, 860 (Tenn. 2013). "A trial court abuses its discretion if it 'applie[s] an incorrect legal standard or reache[s] a decision against logic or reasoning that cause[s] an injustice.'" State v. Harbison, 539 S.W.3d 149, 159 (Tenn. 2018) (quoting Dotson, 254 S.W.3d at 387-88). A trial court may order multiple offenses to be served consecutively if it finds by a preponderance of the evidence that a defendant fits into at least one of seven categories enumerated in code section 40-35-115(b). Those categories include:

(1) The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;

(2) The defendant is an offender whose record of criminal activity is extensive;

(3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b) (2006). An order of consecutive sentencing must be "justly deserved in relation to the seriousness of the offense." Tenn. Code Ann. § 40-35-102(1); see State v. Imfeld, 70 S.W.3d 698, 708 (Tenn. 2002). In addition, the length of a consecutive sentence must be "no greater than that deserved for the offense committed." Tenn. Code Ann. § 40-35-103(2); see Imfeld, 70 S.W.3d at 708.

The record shows the trial court did not consider any of the factors required to impose consecutive sentences and applied an incorrect legal standard. It appears the trial court mistakenly believed that the facilitation of possession of firearm convictions with intent to go armed were mandated by statute to be served consecutively to the underlying dangerous felony. However, as noted by the parties, Tennessee Code Annotated section 39-17-1324(e)(1) requires a conviction for possession of a firearm with the intent to go armed during the commission of a dangerous felony to be served consecutively to a sentence for a conviction of the underlying dangerous felony, but the statute does not require the same for convictions for facilitation of possession of firearm convictions. The record clearly reflects that the trial court would not have imposed consecutive sentencing but for its mistaken belief that such sentencing was mandated by statute. Accordingly, we reverse the imposition of partial consecutive sentencing and modify the Defendant's remaining facilitation of possession of firearm convictions with intent to go armed (Counts 15, 16, and 23, 24) to be served concurrently to his remaining felony drug possession convictions (Counts 3 and 5).

Lastly, as noted by the State, the judgment forms do not accurately reflect the sentences as articulated by the trial court at the sentencing hearing,[4] and we detect multiple errors on the judgment forms. The judgment forms for Counts 11, 12, 13, 14, 19, 20, 21, 22, 27, 28, 29, and 30, for which the Defendant was acquitted by the jury, contain an errant notation that these counts should run consecutive to Count 2, and should be corrected upon remand. Additionally, the judgment forms should be corrected to reflect merger of Count 16 into Count 15, Count 18 into Count 17, Count 24 into Count 23, and Count 26 into Count 25. The judgment form for Count 26, possession of a firearm with the intent to armed during the commission of a dangerous felony (possession of marijuana with intent to deliver), reflects that this Count should run consecutive to Counts 1-7. Based on the underlying felony, this form should be corrected to reflect that Count 26 is merged into Count 25 which is to be served consecutively to Count 5 (possession of marijuana with the

---

[4] This court has held, "[W]hen there is a discrepancy between what is reflected in the sentencing hearing transcript and what is on the judgment form, the transcript controls." State v. Adrian Porterfield, No. W2006-00169-CCA-R3-CD, 2007 WL 3005349, at *13 (Tenn. Crim. App. Oct. 15, 2007) (citing State v. Miranda Sexton, No. E2006-01471- CCA-R3-CD, 2007 WL 596415, at *6 (Tenn. Crim. App. Feb. 27, 2007); see State v. Moore, 814 S.W.2d 381, 383 (Tenn. Crim. App. 1991) ("[W]hen there is a conflict between the court minutes and the transcript of the proceeding, the transcript controls.")).

intent to deliver). Finally, because we have reversed Count 1, the judgment forms in Counts 3, 4, 5, and 6 should be corrected to reflect that they no longer run concurrently to Count 1. Accordingly, we remand this matter to the trial court for entry of corrected judgment forms.

## CONCLUSION

Based upon the above analysis, we reverse and vacate the judgments of the trial court in Counts 1, 2, 7, 8, 9, 10, and 31, and remand for entry of corrected judgments consistent with this opinion. In all other respects, the judgments of the trial court are affirmed.

_____
CAMILLE R. MCMULLEN, JUDGE